Nixon, Appellant, *v.* Nixon.

408

Argued April 28, 1937.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John P. Butt,* for appellant.

*E. V. Bulleit,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1937:

Thomas Hay Nixon, the appellant herein, filed a libel in divorce on July 1, 1933, in Adams County, alleging cruel and barbarous treatment and indignities to the person. Original and alias subpoenas were returned "non est inventus." On August 26, 1935, the court adopted the recommendation of the master and entered a decree divorcing libellant from respondent.

The respondent petitioned the court on October 21,

1935, to vacate the decree on the grounds that the libel was insufficient in that it contained no averment that libellant had been a bona fide resident of this Commonwealth for at least one whole year immediately previous to the filing of his libel, and that no testimony was adduced to that effect; that the libellant was guilty of fraud and imposition on the court, as, in August, 1933, after the issuance of the original subpoena, she returned to libellant's home in Washington, D. C., resumed marital relations with him, and remained there until February or March, 1934, which facts were not disclosed by him in his divorce proceeding. A responsive answer was filed, and after the taking of testimony, the learned court below ordered that the decree of divorce be vacated and set aside. This appeal followed.

The main question before us is whether the record in the divorce proceedings established the jurisdiction of the court of Adams County.

The libellant was born at Gettysburg, where he lived until 1915 when he was appointed a cadet at the United States Military Academy at West Point. He was married June 10, 1922, at Brookline, Mass. After his graduation from West Point he was assigned to different Army posts until 1932, when he became attached to the Ordnance Department in Washington, D. C. In official army documents he was required to execute, he consistently gave his home address as 154 Carlisle Street, Gettysburg, Pa., where his mother lived. In five applications filed by him in the Bureau of Patents between November 26, 1930, and November 14, 1933, he gave his residence as Gettysburg, Pa.

On September 16, 1932, the libellant purchased a home at 3500 Macomb Street, N. W., Washington, D. C. The deed therefor and a mortgage he executed stated his residence to be the District of Columbia. Testimony was offered, in behalf of the respondent, of state-

ments Nixon made to various persons, including her sister, a friend of the family, and a real estate agent, that he had bought this property for a permanent residence, and that he contemplated retiring from the Army.

In 1933 he made application to operate a motor vehicle and for a certificate of title and gave his residence as 3500 Macomb Street, N. W., Washington, D. C. In December, 1934, he applied for a duplicate certificate of title, giving his address when the original certificate was issued as Macomb Street and his present address as 3601 Connecticut Avenue, Washington, D. C. He filed personal tax returns in the District of Columbia in 1933 and 1934, setting forth therein that his residence was 3500 Macomb Street, N. W., Washington, D. C. These returns were in accordance with the Code Law of the District of Columbia, which, in part, provides as follows: "Any person maintaining a place of abode in the District of Columbia on the first day of July of a taxable year, and for three months prior thereto, shall be considered a resident for the purpose of assessment."

After Nixon was graduated from West Point, he never actually resided in Gettysburg, and made but few and very brief visits to his mother.

He did not testify in the divorce case where he lived from June, 1932, to July 1, 1933, the date the libel was filed, and he failed to deny in this proceeding the testimony of respondent and others that he had established a residence in Washington the year before it was filed.

Section 16 of the Act of May 2, 1929, P. L. 1237 (23 PS §16), provides: "No spouse shall be entitled to commence proceedings for divorce by virtue of this act who shall not have been a bona fide resident in this Commonwealth at least one whole year immediately previous to the filing of his or her petition or libel."

The Act of September 19, 1785, P. L. 346, §9, 2 Sm. L. 343, the earliest of our statutes on the subject of divorce, provided that no person was entitled to a divorce "who is not a citizen of this state, and who has not resided therein at least one whole year previous to the filing of his or her petition or libel." Almost identical language was used in the Act of March 13, 1815, P. L. 150, 6 Sm. L. 286. The Act of May 8, 1854, P. L. 644, followed, which eliminated citizenship and substituted "bona fide residence." The next act was May 9, 1913, P. L. 191, and section 2 thereof required only that libellant be a resident of this Commonwealth for one year previous to the filing of the petition or libel in divorce.

It plainly appears that our divorce laws were not enacted for the benefit of non-residents. An absolute prerequisite is that libellant show a bona fide residence for one year within this Commonwealth. It is pointed out in *Starr v. Starr,* 78 Pa. Superior Ct. 579, that if "domicile" had been used in our divorce statutes instead of "residence," it might have been consistent with non-residence; but it was not. The legal requirement of residence is to be determined by the intent of the party, combined with actual residence: *May v. May,* 94 Pa. Superior Ct. 293. An intention is more satisfactorily shown by acts than declarations. "The presumption is that where a person lives, there is his domicile, especially where he has no family elsewhere:" *Reed v. Reed,* 59 Pa. Superior Ct. 178, 182.

In *Gearing, Jr. v. Gearing,* 83 Pa. Superior Ct. 423, the libellant was born in Annapolis, where his father was an instructor in the naval academy, having been appointed to the Navy from Pittsburgh. The libellant was appointed a naval cadet from that same district. He claimed a residence with his grandfather in Pittsburgh until the latter's death, then with his uncle, although he never actually lived in Allegheny County.

We there held that the facts established but a constructive domicile and not an actual residence, which was not adequate, and quoted, with approval, the following statement in 19 C. J. p. 30: "A mere legal residence in the state with an actual residence out of it is not sufficient."

The appellant relies upon *Gearing v. Gearing,* 90 Pa. Superior Ct. 192 (1926). There, the libellant, a naval officer, moved to Philadelphia in January, 1922, with the intention of residing there permanently, and where he was living in August, 1924, when his libel in divorce was filed, interrupted only by short intervals while away from home on sea duty. The court held that his temporary absence did not destroy the existence of his residence in Philadelphia, as he actually resided there from 1922 until the time of the trial, and that he had no other residence or home. Here, the evidence clearly established that although the libellant may be a citizen of Pennsylvania, he did not have, when his divorce action was brought, an actual residence here, with a domiciliary intent.

We might close the opinion at this point, but will touch briefly on libellant's alleged bad faith toward respondent and the court. No doubt can be entertained that a decree of divorce is subject to attack on the ground of fraud: Restatement, Conflict of Laws, §110c. The libellant admitted that the respondent returned to his home in Washington in August, 1933, but he alleges she did not come on his invitation and was living there without cohabiting with him. She said her return was at his solicitation and marital relations were resumed. The original subpoena in this case was returned in August, 1933, the month respondent returned to libellant's home, but the alias subpoena was not issued until more than a year later, although it was stated, and not denied, that the motion therefor was prepared and dated August, 1933. We feel, as did

the learned court below, that this strongly corroborates the wife's allegations that there was a reconciliation and resumption of marital relations. The general presumption is that a husband and wife, living in the same house, engage in cohabitation (*Koch v. Koch,* 62 Pa. Superior Ct. 607); it may be overcome, however, by proof of facts and circumstances which destroy the probability from which the presumption arises.

In *Epstein v. Epstein,* 93 Pa. Superior Ct. 398, it was held that a resumption of marital relations after the institution of divorce proceedings does not constitute a condonation of cruel and barbarous treatment and indignities to the person as to amount to an abandonment of the suit, as in the case of adultery. After a reconciliation, which the law favors, if there is a disregard of promises made by a respondent, proof ought to be offered of the acts committed by respondent amounting to a breach of the reconciliation agreement before libellant is granted a divorce for the original acts. See *Lacock v. Lacock,* 74 Pa. Superior Ct. 378.

In this case, there is no evidence in the record that the respondent acknowledged any wrongdoing or sought a reconciliation, and it is silent as to the conduct of either party after the wife returned to the Washington home. Notwithstanding the facts disclosed therein, the libellant testified in the divorce proceeding that they separated on March 23, 1933, and had not lived together thereafter. We are inclined to believe that if the court had known these facts, the divorce would not have been granted unless the wife was at least given an opportunity to be heard. We can but conclude that the court was misled and deceived by the libellant's suppressing the truth as to important facts. This conduct amounted to an imposition not only on the respondent but on the court. As was said in *Walton v. Walton,* 84 Pa. Superior Ct. 366, 369: "...... it is due to the just and orderly administra-

tion of justice that decrees be not obtained by the suppression of the truth, and this is especially true in proceedings in divorce in which a public as well as a private interest is involved." See, also, *Willetts v. Willetts*, 96 Pa. Superior Ct. 198.

Decree of the lower court is affirmed, at appellant's costs.