Huston *v.* Huston, Appellant.

502

Argued November 18, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Burton R. Laub,* for appellant.

*William W. Knox,* with him *Robert J. Firman,* and *T. J. Mahoney,* for appellee.

OPINION BY CUNNINGHAM, J., March 18, 1938:

On July 1, 1935, Ray E. Huston instituted proceedings in the court below for an absolute divorce from his wife, Eva B. Huston, under the provisions of "The Divorce Law" of May 2, 1929, P. L. 1237. The libel was based upon sub-paragraphs (e) and (f) of paragraph 1 of section 10, 23 PS §10. That paragraph provides: "It shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner [specified in the statute], that the other spouse......(e) shall have, by cruel and barbarous treatment, endangered the life of the injured and innocent spouse; or (f) shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome." A jury trial in the court below, at which the trial judge submitted both grounds to the jury for its determination, resulted in a verdict in favor of the husband; the wife's motions for a new trial and for judgment n. o. v. were denied and she has appealed from the final decree entered upon the verdict.

We are all of opinion that the case must be retried because, (a) material facts bearing directly upon the good faith of the husband-appellee were not sufficiently investigated and developed, (b) the evidence did not warrant the submission to the jury of the charge of cruel and barbarous treatment, and, (c) the charge was not merely inadequate but erroneous in several particulars.

With us, marriage is an institution in the preservation of which the Commonwealth, itself, has such a vital

interest that it is always the unnamed third party in every divorce proceeding—a fact which seems to have been overlooked in this case. "Whether the marital contract shall be severed is the gravest of questions, not alone to the parties, but to the state, for the social structure rests upon it": *Middleton v. Middleton,* 187 Pa. 612, 615, 41 A. 291. A divorce may be granted only upon "clear proof of imperious reasons": *Richards v. Richards,* 37 Pa. 225, 228.

Ordinarily, upon an appeal from a decree in divorce we are required to consider the evidence de novo, pass upon its weight and upon the credibility of witnesses, and reach an independent conclusion upon the merits; but where there has been a jury trial the extent of our review is limited to a consideration of the same matters as are involved in disposing of an appeal from a judgment entered upon a verdict in an ordinary civil case: *Shaw v. Shaw,* 36 Pa. Superior Ct. 122; *Kurniker v. Kurniker,* 94 Pa. Superior Ct. 257; *King v. King,* 113 Pa. Superior Ct. 285, 173 A. 432; and *Rinoldo v. Rinoldo,* 125 Pa. Superior Ct. 323, 325, 189 A. 566.

Although we may not consider the credibility of witnesses or the weight of the evidence, it is our duty to determine whether this appellee introduced sufficient evidence upon either branch of his case to justify the trial judge in submitting the issues thereunder to the jury, and to inquire whether the law has been properly applied to the facts which a jury could reasonably find. In reviewing this record we have followed the familiar rule that the testimony must be read in the light most favorable to the appellee and where there is a conflict between his testimony and that of the appellant his credibility is to be assumed.

When the testimony is considered in the manner indicated it is at once apparent that the libel in this case was filed under circumstances which not only justified but demanded the most thorough scrutiny and investi-

gation in order to determine whether the proceedings were instituted by the appellee in good faith. "Courts ought never to sever the marriage contract but where the application is made in sincerity and truth, for the causes set forth, and no other, and fully sustained by the testimony": *Middleton v. Middleton,* supra, citing *Angier v. Angier,* 63 Pa. 450.

In referring to the uncontroverted facts which we think were not fully developed at the trial or given the attention the interests of the Commonwealth demanded, we lay aside for the present all the testimony by which the appellee sought to sustain his charges of cruel and barbarous treatment and indignities.

The parties (each of whom was approximately fifty-five years of age at the time of trial and had been previously married) were married to each other on June 17, 1909, in the City of Erie, and lived together, with the exception of several temporary separations, for more than twenty-five years. Appellee was a steam engineer and appellant during practically all of their married life conducted a rooming house. On July 4, 1934, appellee left the common domicile and went to Sacramento, California. This separation followed accusations made by each against the other of undue intimacy with persons occupying rooms from time to time in their home. Appellant charged appellee specifically with adultery with a Mrs. Greene, a widow, who rented an apartment from them, but left Erie approximately one year before he went to California. We are not now concerned with the truth or falsity of these accusations; adultery is not pleaded in the libel as a ground for divorce.

Appellee admitted on cross-examination that shortly after reaching California he visited Mrs. Greene who was then at Auburn, some thirty-eight miles from Sacramento. On October 13, 1934, he applied for, and secured by correspondence and without leaving Sacra-

mento, a so-called decree of divorce from a Mexican court, purporting to divorce him from appellant. One week later he went through a marriage ceremony with Mrs. Greene in the State of Nevada. In January, 1935, appellee and Mrs. Greene returned to Conneautville, Pa., for a week or ten days and then went to Buffalo, New York. During the following month he was arrested at the instance of appellant, brought back to Erie, and an order of support for the benefit of appellant was made against him by the quarter sessions of Erie County. The record does not disclose how or where he has been living since that time, but he testified Mrs. Greene was living at "1129 Buffalo Road" at the time of the trial, presumably an address in the City of Buffalo. The present libel, dated May 31, 1935, was filed on July 1st of that year.

One of the questions naturally raised by appellant was whether appellee had "been a bona fide resident in this Commonwealth at least one whole year immediately previous to the filing" of his libel—a prerequisite under section 16 of the statute to the exercise of jurisdiction in this case by the court below. The trial judge submitted that issue to the jury and requested a specific answer thereto. The language of the charge was: "Now, even if the causes that would entitle him to a divorce on their merits were such that a divorce should be granted, yet if he were not a resident of Pennsylvania during the year preceding that, he would not be entitled to a divorce. But when a person has gained a residence in any place the continuation of that residence is largely a matter of intention. If this libellant went away with the intention of still maintaining his home in Pennsylvania and with the intention of returning here for the purpose of making his home, he then would still retain his residence in Pennsylvania. I am not quite sure of all the evidence on that point in this case. I still think that that may be

a question for the court and not for the jury, but I am going to submit that question to you with the other questions in this case, and I am going to ask you to make a separate finding with respect to that. That matter can be afterwards refused, and notwithstanding what you may find relative to the residence of the libellant I am going to ask you to pass upon the other issues in this case in a separate finding." The reply of the jury was, "The jury agree that libellant has never given up his residence in Pennsylvania." Their general verdict was "for the libellant."

The only other comment upon the suspicious circumstances to which we have referred was the following: "If there were no unusual relations, and if the relation of this libellant with Mrs. Greene was merely a casual acquaintance, as his testimony would seem to indicate, it might seem a little unusual about her going to California when he did. He says they did not go together, that she came out there in an automobile. I think he said he was some four or six weeks getting out there after he left Erie. He stopped in Cleveland and got out there in August and some time during that month he discovered that Mrs. Greene was in a nearby town. I think he said he had written a card to her there. But in some way he did learn she was there and proceeded to see her, and some time later he got a Mexican divorce and shortly after that he was married to this woman and they returned later to Pennsylvania and he says he came back to Erie and other places in Pennsylvania looking for work, and not finding work went on to Buffalo. You heard what was done relative to that."

In our opinion, available competent testimony which would throw considerable light one way or the other upon this fundamental issue in the case could have been, but was not, introduced at the trial. Appellee testified he had his Mexican divorce decree with him, but was

not called upon to produce it. We think it was material to know whether appellee, while living in California and applying for a divorce in Mexico, gave his residence as California or Pennsylvania, and to inquire which state he gave as his residence when he married Mrs. Greene in Nevada. We are unable to see any good reason why these facts, which should be matters of record, were not disclosed at the trial. Moreover, we think the charge upon this aspect of the case was inadequate.

There is no difficulty about the principles of law applicable to a case of this character. "Residence" within the meaning of the statute means a "permanent one with domiciliary intent": *Gearing v. Gearing*, 83 Pa. Superior Ct. 423. In *Starr v. Starr*, 78 Pa. Superior Ct. 579, it was said: " 'Domicile' is a matter of intention; 'residence' is a physical fact, and the term 'bona fide residence' means residence with domiciliary intent i. e., a home in which the party actually lives." Nor is there any question about the shifting of the burden of proof with respect to residence in this case. Appellee had the burden imposed upon every libellant of proving a bona fide residence within the Commonwealth during the whole of the year immediately previous to July 1, 1935, the date of the filing of his libel. He undertook to meet this burden by showing the unquestioned fact that he had been a resident of Erie for more than twenty-five years prior to July 4, 1934, and then testifying he went to California to "regain his health" and did not intend to "take up any permanent residence anywhere out there."

In *Davis v. Davis*, 91 Pa. Superior Ct. 354, it was said, in substance, that a domicile once acquired must be presumed to continue until another has been acquired by actual residence, coupled with an intention of abandoning the domicile of origin. It was added, citing *Price v. Price*, 156 Pa. 617, 627, 27 A. 291, "This change

must be animo et facto, and the burden of proof is on the party who asserts the change."

It has been repeatedly held that mere temporary absences from the state of domicile during the year preceding the filing of a libel will not, in and of themselves, defeat the right of a libellant to invoke the jurisdiction of the proper court of the state of which he is technically a citizen: *Heath v. Heath*, 44 Pa. Superior Ct. 118; *Shaw v. Shaw*, 72 Pa. Superior Ct. 191; *Wilson v. Wilson*, 80 Pa. Superior Ct. 20.

As the question of jurisdiction depended in this case upon questions of fact, it was the province of the jury, subject to the direction of the trial judge as to matters of law, to determine it: *Gearing v. Gearing, (No. 2)*. 90 Pa. Superior Ct. 192.

It was of little help to the jury to tell them that if appellee "went away with the intention of still maintaining his home in Pennsylvania and with the intention of returning here for the purpose of making his home" he would still be a resident of Pennsylvania, without also telling them they were not bound to accept his declaration on the stand with respect to his purpose in going to California, but had the right to ascertain his "intention" for themselves by a consideration of all the evidence relative to his actions and the course of the extraordinary events which followed so closely upon his arrival in Sacramento. An instruction that one's real intention may be inferred from his actions, which sometimes speak louder than words, as well as from his declarations, would have been proper. It was for the jury to decide, under adequate instructions, whether the appellee's selection of Sacramento as his objective was due to its climate or the proximity of Mrs. Greene; whether his association with her, the obtaining of the Mexican divorce and his hasty reassumption of marital bonds and responsibilities, were merely incidental to the restoration of his health or were evidence that his

real intention in going to California was to resume meretricious relations with his paramour, rid himself of his obligations to appellant, and establish a new residence outside of Pennsylvania. The fact that upon his return from California he lived in the State of New York was also a matter for their consideration. Moreover, it is possible that the records to which we have referred may disclose facts which would place upon appellee at least the burden of going forward with evidence to support his contention that he had no intention of changing his residence.

The Commonwealth is entitled to know whether, under all the available evidence, this application for a divorce was "made in sincerity and truth, for the causes set forth," or, on the contrary, is merely an attempt by this husband to extricate himself from the legal entanglements in which he has involved himself.

The next question involved is whether there was any evidence justifying the submission of the charge of cruel and barbarous treatment to the jury. Accepting appellee's statements in each instance and rejecting appellant's explanations and denials, the only facts stated by him which might possibly support that charge were either extremely remote or lacking in such continuity as is requisite to show a course of treatment. For instance, appellee testified, "just after we was married she hit me in the head with a shoe one time. I was in bed and she knocked me unconscious." That was twenty-five years before the trial. Another statement was that a year or two after their marriage she accused him of being drunk and hit him over the head with a sharp edged frameless mirror, splitting his ear and cutting his head. A more recent incident related was that a year or two before he left their home appellant struck him on the arm with a poker during a quarrel over money matters. Appellee was most indefinite with reference to alleged threats of bodily

harm; his statement was that "time and time again" appellant threatened to "pop him off" if he went to sleep, and to poison him.

Cruel and barbarous treatment and the offering of indignities are separate and distinct grounds for divorce and their distinguishing characteristics have been repeatedly indicated. In the recent case of *Davidsen v. Davidsen*, 127 Pa. Superior Ct. 138, 191 A. 619, this court said: "Cruel and barbarous treatment, within the meaning of the statute, implies a merciless and savage disposition leading to conduct amounting to actual personal violence or creating a reasonable apprehension thereof—such a course of treatment as renders further cohabitation dangerous to physical safety:" See also *McMahen v. McMahen*, 186 Pa. 485, at pages 490, 491, 40 A. 795, and *Koontz v. Koontz*, 97 Pa. Superior Ct. 70. The remote and isolated incidents testified to by appellee did not amount to a "course of conduct," nor could a jury reasonably be permitted to find from his testimony that appellee had a genuine apprehension of violence to his person.

As was said in *Conrad v. Conrad*, 112 Pa. Superior Ct. 198, 170 A. 342: "We find no evidence upon the record of cruel and barbarous treatment within the meaning of the statute, as interpreted in many appellate decisions; namely, actual personal violence or the reasonable apprehension thereof, or such a course of treatment as endangers life or health and renders cohabitation unsafe: *Auerbach v. Auerbach*, 98 Pa. Superior Ct. 369; *Koontz v. Koontz*, 97 Ibid. 70. But, as stated in *Sklan v. Sklan*, 110 Pa. Superior Ct. 226, 168 A. 481, conduct and threats which may not amount to treatment endangering life are properly considered, in connection with other conduct, under a charge of indignities to the person."

When, however, the testimony of appellee and his witnesses in support of the charge of indignities is re-

512

viewed, we think there was sufficient to take the case to the jury upon that issue. As the case is to be retried, we need not refer to the various items in detail. In general, his testimony, which for present purposes we assume to be true, was to the effect that appellant had followed him on the street, quarreling with him, and striking him over the head with her umbrella; had falsely accused him of improper conduct with women employees of the hospital where he was engineer and made complaints of that character to his superiors to such an extent that appellee was told he must make appellant stop interfering with his work or lose his job. Another charge was that appellant had bragged, in the presence of others, about her alleged intimacy with her divorced husband at the latter's farm. A large part of appellee's testimony was devoted to descriptions of quarrels with appellant over money matters. He asserted in general that appellant compelled him to turn over his entire salary to her and refused to give him a reasonable allowance for his personal needs. It was in charging upon this testimony that the trial judge seems to us to have committed fundamental error. An excerpt reads: "One of the ladies living in the house said she saw him ask for some money at one time and that Mrs. Huston reluctantly gave him fifty cents for some purpose and told him that it would have to last him for some certain length of time. Now, of course a man is entitled to his earnings. He is bound to support his family, and the wife, for the maintenance of the home, is entitled to a part of that income. The arrangements that are made relative to that vary in different families, and if the libellant turned all his earnings over to the respondent and had difficulty at any time in getting money, even in small amounts, for his own personal use, as he testified, that perhaps, if continued over a period of years, would constitute an indignity and perhaps a *cruelty*. Then the libellant testified to

relations with other men. That is not the issue that you are trying here, but conduct of that kind, if it was carried on over a period of time, would constitute *a cruelty* or *an indignity,* and it is for that reason that such testimony became admissible." (Italics supplied)

It is extremely doubtful whether the quarrels with relation to financial affairs, as related by appellee, amounted even to indignities and it was clearly erroneous to tell the jury they might be considered as constituting cruelty. The testimony of appellee with relation to improper conduct by appellant upon several occasions with men roomers would have been admissible in support of a charge of adultery if that ground had been set out in the libel, but this testimony should not have been submitted to the consideration of the jury as supporting either of the charges contained therein.

In conclusion, and as a suggestion of the manner in which the jury should be instructed to consider the evidence relative to indignities, it may not be amiss for us to quote the following from *Davidsen v. Davidsen,* supra: "It has been repeatedly held that, in considering whether a divorce should be granted upon the ground of indignities, the law does not concern itself with isolated occurrences; it contemplates a course of conduct or continued treatment, not single acts separated by long intervals of time: *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350, . . . . . . Moreover, there must be evidence from which an inference of settled hate and estrangement may be deduced. Indignities provoked by the complaining party are not grounds for divorce unless the retaliation is excessive. No general rule can be laid down. Each case necessarily depends upon its particular circumstances, having regard to the position in life, character and disposition of the parties: *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 174 A. 821; *Esenwein v. Esenwein,* supra."

For the reasons indicated, we sustain the first and third assignments of error relating to the refusal of a new trial and the entering of the final decree.

Decree reversed and a new trial directed.