Alburger *v.* Alburger, Appellant.

Argued November 16, 1939.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Earl Jay Gratz,* for appellant.

*Edmund W. Kirby,* for appellee.

OPINION BY BALDRIGE, J., January 30, 1940:

This action in divorce was brought by a husband against his wife on the grounds of (1) cruel and barbarous treatment and (2) indignities to his person such as to render his condition intolerable and life burdensome. The master recommended the libel be dismissed. The court sustained exceptions in part to the master's report, granting a divorce for indignities only. The respondent appealed.

It is unnecessary for us to discuss the merits of the case as the decree of the court below must be reversed for want of jurisdiction, as the libellant failed to prove that he had acquired a bona fide residence in this Commonwealth at least one whole year immediately previous to the filing of his libel, as is required by the Pennsylvania Divorce Code of May 2, 1929, P. L. 1237, section 16 (23 PS sec. 16).

The libellant was born May 22, 1888, in Philadelphia. In 1895, when he was seven years old, his family moved to Merchantville, New Jersey, where the libellant continued living, with his parents, for twenty-two years. He registered and voted in Merchantville, became a member of a church, and joined a fraternal organization there.

In 1917 he joined the United States Marines at Philadelphia, stating that Merchantville was his place of residence. He reported for duty at the Marine Barracks in Philadelphia, and lived there fourteen months until July, 1918, when he was assigned to Quantico, Virginia. Thereafter he was transferred to different stations, returning to Quantico in 1925. In November of that year he married the respondent, a resident of

New York City, in Washington, D. C. Immediately after the marriage, he returned to Quantico and his wife to New York. It was her custom for several months to spend her week-ends in Washington with her husband at different hotels. In January, 1926, they started to live together continuously, first in Fredericksburg and then in Quantico. September of that year he was assigned to Cuba and his wife then went back to New York. Thereafter he was located in different stations in this country and abroad, and at times she for brief periods joined him.

In 1930 the parties were living in Shanghai, where they remained until October, 1932, when they returned to the United States. After a short stay in California they went to New York, he reporting for duty at the Brooklyn Navy Yard. Very shortly thereafter he obtained a leave of absence of ten days, which he spent with his parents in Merchantville.

In January, 1933, he was assigned to the Philadelphia Navy Yard. The first two weeks he lived with his wife at the St. James Hotel. They then moved to a furnished apartment on Baltimore Avenue, Philadelphia, which he rented on a monthly lease. They remained there until June 13, 1933, when he was assigned to duty in a CCC Camp in Kentucky. His wife again went to New York, taking with her their belongings, with the exception of some of her husband's effects which were sent to Merchantville, and his uniforms, books, and certain of his clothing which he sent to a locker in the Philadelphia Navy Yard.

After serving in CCC Camps in Kentucky and Ohio he returned to the Philadelphia Navy Yard in February, 1934, and was assigned to the barracks, where he live until August, 1935. During this last period he visited his parents in Merchantville two and three times a week, staying overnight on each occasion. On the 19th of December, 1934, he filed his libel in divorce.

During all this period of service he was never assessed

nor did he pay any taxes, except an income tax in Philadelphia on two occasions, dates not given, and once when he was located in St. Thomas, Virgin Islands.

We said in *Starr v. Starr,* 78 Pa. Superior Ct. 579, 583, that the words "bona fide," as used in the Act of May 8, 1854, P. L. 644 (which contains the same language as section 16 of the Act of 1929, supra) "mean an intention to make the residence permanent and not merely temporary. Had the word 'domicile' been used instead of residence it might have been consistent with nonresidence, but it was not. 'Domicile' is a matter of intention; 'residence' is a *physical fact,* and the term 'bona fide residence' means residence with domiciliary intent, i. e., a home in which the party actually lives." (Italics supplied.)

There is no doubt that the libellant was originally a resident of New Jersey, as a "minor child has the same domicile as that of his father:" Restatement, Conflict of Laws, sec. 30, Comment (c); *Raymond v. Leishman,* 243 Pa. 64, 68, 89 A. 791. The exercise of the right of suffrage by the libellant in New Jersey conclusively shows residence with a domiciliary intent: *Reed v. Reed,* 59 Pa. Superior Ct. 178, 181; *Shelton v. Tiffin,* 47 U. S. 163. He, therefore, was definitely a resident of New Jersey after attaining his majority.

When a residence is once acquired, it is presumed to continue until it is shown to have been changed, and when a change is alleged, the burden of proving it rests upon the one making the allegation, and two things are indispensable thereto: First, a residence in a new locality, and, second, the intention to remain there. "Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired the old one remains:" *Barclay's Estate,* 259 Pa. 401, 405, 103 A. 274; *Huston v. Huston,* 130 Pa. Superior Ct. 501, 197 A. 774.

The domicile of a soldier in military service generally

remains unchanged, "domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years:" 19 C. J. p. 418, sec. 39; Beale, Conflict of Laws (1935) p. 155.

The learned court below did not discuss, and we are not sure, therefore, whether it considered the question of its jurisdiction. The master was in error when he stated that the libellant gave his address as Philadelphia when he entered the Navy. His testimony (240a) shows that he gave his residence as Cove Road, Merchantville, New Jersey. The master's erroneous conclusion that the Pennsylvania courts had jurisdiction may be attributable to this inadvertent misstatement of fact. The libellant's testimony was rather vague concerning the time his residence began in Philadelphia. He certainly did not definitely state that he regarded himself a resident of Philadelphia prior to January, 1933, as is disclosed by his testimony, reading as follows:

"By the Master:

"Q. There is one thing further about this question of residence that I would like to ask you: Why do you consider Pennsylvania your place of residence?

"A. Because that is where my station and duty is.

"Q. When did you first determine that Pennsylvania was your residence?

"A. The 4th of January, 1933—the first?

"Q. Yes.

"A. May 22, 1888.

"Q. You did not have capacity to think at that time.

"A. I considered when I arrived here on January 7, 1933—the 1st of January, 1933, is when I considered I came to Philadelphia as a resident because I was stationed in the City at the Navy Yard."

Furthermore, declarations alone of domicile are self-serving and insufficient; they must be followed by acts which are in accordance with the declarations: *Dorrance's Estate*, 309 Pa. 151, 163 A. 303. There is noth-

ing in the record before us that indicates the last assignment was different in any way from his previous assignments to the Navy Yard. His stay, as formerly, was temporary, as he actually remained there only five months, from January to June, 1933, an insufficient time to establish a residence within our divorce statute. We fail to find any declaration, followed by conduct, which clearly indicated libellant's intention to establish his permanent place of abode in Philadelphia at least until 1934. We said in *Dulin v. Dulin,* 33 Pa. Superior Ct. 4: "It is not the policy of our laws to make this state a transitory resting place to secure the annulment of a contract of marriage."

Even if we assume the libellant began to live permanently in Philadelphia in 1934 when he last returned, it would be unavailing in this proceeding to establish jurisdiction, as, in that event, he had not resided within the Commonwealth one whole year prior to the filing of the libel in December, 1934.

We do not regard this case as strong in its facts as that of *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154. There the libellant was born in Gettysburg, Pennsylvania, in 1895, from where he was appointed to the United States Military Academy in 1915. Three years later he was commissioned a second lieutenant in the United States Army. In 1922 he married the respondent at her home in Brookline, Massachusetts. Thereafter they lived together at each place to which he was assigned. He never registered nor voted. In 1932, when on duty in the Ordnance Department at Washington, D. C., he purchased a home in the city and paid there personal property taxes. He represented himself as a resident of Washington when he applied for an operator's license for a motor vehicle. The marital domicile was never established in Pennsylvania and the libellant only went to Pennsylvania about every two years to see his mother. The court held that Pennsylvania was the bona fide residence of the libellant; that as an army

officer he was subject to be ordered anywhere, stating (p. 267) : "Generally, these officers call their place of birth or the residence of their parents their home." Alburger, of course, could not claim Philadelphia as his residence by virtue of his birth there, as he acquired a new residence thereafter in Merchantville, his parents' home.

In *Gearing v. Gearing*, 83 Pa. Superior Ct. 423, the action was brought in 1921. The libellant's claim to domicile in Pennsylvania rested upon the fact that his father was appointed a naval cadet from Pittsburgh (but he never subsequently lived there) and that he was appointed to the Naval Academy from Pittsburgh where his grandfather had his residence, but the libellant never resided there. He was born at Annapolis where his father was an instructor in the Naval Academy. This court, in declining to take jurisdiction, said, speaking through our present President Judge KELLER (p. 424) : "Our decisions hold that the residence contemplated by our statutes relating to divorce is a permanent one with domiciliary intent; a temporary residence without intention to establish a domicile is not enough." On August 14, 1924, Gearing filed another libel in divorce (see *Gearing v. Gearing*, 90 Pa. Superior Ct. 192). The evidence in that action showed that in January, 1922, libellant moved to Philadelphia with the intention of making that his permanent home. Part of the time his duties required him to live in officers' quarters in the Navy Yard. When not obliged to be there he apparently lived elsewhere in Philadelphia, and continued thus to live thereafter, with the exception of short intervals when performing sea duty. We held that the facts were sufficient to establish jurisdiction of the Pennsylvania Court.

The appellant argues that as League Island, on which the Philadelphia Navy Yard is located, was ceded to the United States by the Act of February 10, 1863, P. L. 24, and the supplement of April 4, 1866, P. L. 96

(74 PS sec. 1 note), and the federal government was given exclusive jurisdiction thereover (see *Fort Leavenworth R. R. Co. v. Lowe,* 114 U. S. 525, 5 Sup. Ct. 995, 29 L. ed. 264), except for criminal or civil processes, the libellant could not acquire a bona fide residence in Pennsylvania by living at League Island. There may be merit to that position, but we will not prolong our consideration of the case further, as we are all of the opinion that, independent of that contention, the libellant has not brought himself within our statute requiring a bona fide residence for a period of one year prior to filing his libel in divorce.

Decree of the court below is reversed, and it is ordered that the libel be dismissed for want of jurisdiction, at the appellee's costs.