Verbeck *v.* Verbeck, Appellant.

Argued March 3, 1947. Before RHODES, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*William A. Valentine,* for appellant.

*Roy B. Pope,* with him *Johnston & Pope* and *Ralph J. Johnston,* for appellee.

OPINION BY ROSS, J., April 16, 1947:

The libel in this divorce action averred that respondent had, by cruel and barbarous treatment, endangered libellant's life, and had offered such indignities to his person as to render his condition intolerable and life burdensome. The parties were married March 16, 1932, at Towanda, Pennsylvania, and lived and cohabited at Oneonta, New York, until April 1942, when the libellant moved to Wilkes-Barre.

The matter was referred to a master who, after finding that the respondent pursued toward the libellant husband a course of conduct marked by cruel and barbarous treatment and indignities to the person, recommended a divorce a.v.m. Exceptions filed to the master's report were overruled by the court below, the decree of divorce was granted, and this appeal was taken.

Respondent's answer to the libel, in addition to denying the allegations of cruel and barbarous treatment and indignities, averred that the libellant had not been "a bona fide resident of the State of Pennsylvania and County of Luzerne for a period of one full year and upwards previous to the filing of the Libel". Consequently, jurisdiction of the lower court is the first question presented for our consideration.

Our divorce laws were not enacted for the benefit of non-residents and the fundamental policy of the Commonwealth forbids resort by strangers to its courts for the purpose of divorce. *Dulin v. Dulin,* 33 Pa. Superior Ct. 4; *Nixon v. Nixon,* 127 Pa. Superior Ct. 407, 193 A. 132. This policy finds expression in the statutory provision (section 16 of the Act of May 2, 1929, P. L. 1237, 23 PS 16) that the libellant must be a bona fide resident of Pennsylvania for one whole year immediately

prior to the filing of the libel. This requirement is strictly jurisdictional and cannot be waived by the parties, even with the consent of the court. As stated by RICE, P. J., in *English v. English,* 19 Pa. Superior Ct. 586, at page 596: "Consent of a party as expressed by his appearance cannot, in divorce, create a jurisdiction over the subject-matter which the court would not otherwise have. No matter how expressed, consent of the parties, even with the consent of the court added, cannot give the court jurisdiction of a libel in divorce . . . unless the libellant shall have resided in the state at least one whole year previous to the filing of his or her petition or libel. . . . This prerequisite is not in the nature of a personal privilege or safe-guard which the respondent may waive, or the court, in its discretion, dispense with."

"Residence" within the meaning of the statute means a "permanent one with domiciliary intent". *Gearing v. Gearing,* 83 Pa. Superior Ct. 423; *Huston v. Huston,* 130 Pa. Superior Ct. 501, 197 A. 774. In *Starr v. Starr,* 78 Pa. Superior Ct. 579, in a per curiam opinion, this court stated: " 'Domicile' is a matter of intention; 'residence' is a physical fact, and the term 'bona fide residence' means residence with domiciliary intent, i. e., a home in which the party actually lives." The general meaning and significance of domicile has been thoroughly considered and reviewed in Pennsylvania decisions. In *Dorrance's Estate,* 309 Pa. 151, 163 A. 303, the Supreme Court said: "One of the most satisfactory definitions of domicile is that stated by Story in his 'Conflict of Laws': 'By the term domicile in its ordinary acceptation is meant the place where a person lives or has his home. In a strict legal sense that is properly the domicile of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.' " This court in *Gearing v. Gearing,* 90 Pa. Superior Ct. 192, 195, approved the definition in Bishop

on Marriage, Divorce and Separation, Vol. 2, sec. 88: "Domicil is the place in which, both in fact and intent, the home of a person is established, without any purpose to return to a former home; the place where he lives, in distinction from that where he transacts his business; the place where he chooses to abide, in distinction from that in which he may be for a temporary purpose; the place which he has chosen, in distinction from one to which he may be exiled or sent a prisoner, or being in the government service, to which he is ordered . . . it is the place which the fact and the intent, combining with each other and with the law, gravitate to and center in, as the home."

Every person has at all times one domicile and no person has more than one domicile at a time. Restatement of Conflict of Laws, sec. 11. When a domicile is once acquired it is presumed to continue until it is shown to have been changed, and when a change is alleged the burden is upon the one making the allegation to prove a residence in a new locality and an intention to remain there. *Alburger v. Alburger,* 138 Pa. 339, 10 A. 2d 888. The new domicile must be acquired by actual residence and the change must be "animo et facto". *Price v. Price,* 156 Pa. 617, 27 A. 291.

After their marriage, the parties resided together in Oneonta, New York, until April 14, 1942, when the libellant left the marital habitation, taking with him his clothes and other personal belongings, and rented a room in a rooming house on East Market Street, Wilkes-Barre. He is a locomotive engineer, whose run is between Wilkes-Barre and Oneonta, and his work requires him to stay in each place every other night. Prior to the separation, when the libellant was in Wilkes-Barre, he "got a bed from night to night", but since the separation he has occupied the East Market Street room continuously when in Wilkes-Barre with the exception of two months in the summer of 1943 when, for reasons of health, he lived in a rented room in Forty Fort,

Luzerne County, approximately two miles from Wilkes-Barre. He testified that he moved to Wilkes-Barre because it "seemed like home to me", he having been born there, and that he has considered it his "legal residence" since April 14, 1942. His testimony relative to his continuous occupancy of the room on East Market Street was corroborated by his landlady and others.

In determining the existence of a domiciliary intention all the circumstances must be considered and the evidence necessary to constitute domiciliary intent varies with the case. The proof of change of a domicile does not depend upon any particular fact but upon whether all the facts taken together tend to establish a new, fixed and permanent residence. *Reed v. Reed,* 59 Pa. Superior Ct. 178; *Commonwealth ex rel. Saunders v. Saunders,* 155 Pa. Superior Ct. 393, 38 A. 2d 730. From an examination of the record in this case, it is our opinion that the facts establish the necessary domiciliary intention and that the libellant was a "bona fide resident" of Pennsylvania for "at least one whole year immediately previous to the filing" of his libel and, therefore, the lower court properly exercised jurisdiction.

The fundamental characteristic of cruel and barbarous treatment is the commission of acts of physical violence or the creation by words or conduct of the reasonable apprehension of such violence. A single act of cruelty may be so severe and with such attending circumstances of atrocity as to justify a divorce. *Eberly v. Eberly,* 154 Pa. Superior Ct. 641, 36 A. 2d 729. To constitute indignities to the person there must be such a course of conduct or continued treatment as renders the libellant's condition intolerable and life burdensome. *Krug v. Krug,* 22 Pa. Superior Ct. 572.

It is in evidence that the respondent assaulted the libellant with a pair of pruning shears, stabbing him twice in the arm and hand and "tried to reach my eyes", necessitating medical attention. It would appear that these two veterans of matrimony and marital skirmishes

(this was the libellant's second marriage and the respondent's third) were thorough and emphatic in prosecuting their domestic squabblings. It was testified that on innumerable occasions over a period of years and almost continuously, the wife called her husband "a liar", "a crook", "a thief", and other less savory names. She accused him of having a social disease and of running around with other women. This type of quarreling had been continuous for almost all of their married life and it was necessary for the libellant to receive frequent medical attention as a result of the course of treatment to which he was subjected. The respondent did not deny the name-calling and her denial of the stabbing incident was evasive; in fact, her testimony and her manner of giving it—discernible from a reading of the cold record—strengthens the libellant's case.

It is the duty of this court to decide whether the libellant has presented "clear proof of imperious reasons" in establishing the essential facts of his case. *Dailey v. Dailey,* 105 Pa. Superior Ct. 461, 161 A. 475; *Biddle v. Biddle,* 50 Pa. Superior Ct. 30. The indignities to the husband must not have been provoked by him or such as could have been prevented by means reasonably within his power for "indignities provoked by the complaining party are . . . no ground of divorce unless the retaliation is excessive". *Richards v. Richards,* 37 Pa. 225.

A careful examination of the record leads us to believe that while there has been fault on the part of both parties and each has some responsibility for the friction which developed, yet the libellant has established by a preponderance of the evidence the allegations that he was subjected to cruel and barbarous treatment at the hands of his wife and suffered a continuous and prolonged series of indignities to his person. While the report of the master is to be given fullest consideration, particularly as regards the credibility of witnesses, his findings and recommendations are advisory only (*Fish-*

*man v. Fishman,* 134 Pa. Superior Ct. 217, 4 A. 2d 543) and it is our duty to examine the testimony carefully and make our own independent finding. It is our opinion that the libellant is entitled to a divorce on both grounds alleged in the libel.

The fact that the master did not cross-examine the witnesses is not, necessarily, error. If he could determine in his own mind the truth or falsity of those testifying before him when they were cross-examined by counsel, who adequately represented each of the litigating parties, without asking questions of his own, he has performed the duties of his office as was required of him by a rule of court which reads as follows: "It shall be the duty of the Master to cross-examine the witnesses closely to ascertain the truth and the whole truth concerning the ground or grounds of divorce". No request was made of him by the parties or their counsel to ask questions at the hearings, and unless he wished to clarify some points of the case in his mind or test the credibility of a witness, it was his choice to cross-examine or not.

Decree affirmed.