## Dumont v. Dumont

*Edward D. Foy, Jr.*, for plaintiff.
*Harold Diamond,* for defendant.

MONROE, J., July 14, 1970.—Plaintiff commenced this action by the filing of a complaint in divorce a.v.m. on November 13, 1967, alleging indignities. On March 22, 1968, defendant filed an answer with a counterclaim for divorce a mensa et thoro on the ground of indignities. On March 21, 1968, a master was appointed to hear the testimony and to make report to the court. On January 20, 1969, with leave of court, plaintiff filed an amended complaint, alleging deser-

tion as an additional ground for divorce. On April 21, 1969, on petition of defendant, a rule was granted on plaintiff to show cause why defendant should not be granted leave to file an amended counterclaim alleging adultery. Plaintiff did not answer the rule. Defendant did not file an amended counterclaim. Hearings were held before the master on May 2 and May 28, 1968 and on May 5, 1969. At the third and final hearing, defendant raised the issue of lack of jurisdiction in this court. That issue had not been raised in the answers which defendant had filed to plaintiff's complaint and amended complaint. On December 23, 1969, the master filed his report. The master found that this court had jurisdiction, that plaintiff had established his right to a divorce on the grounds of indignities and desertion and that defendant had not established indignities to her person. Defendant did not file exceptions to the report. The undersigned, acting for the court, after examining the master's report, the testimony and evidence in the case, was not satisfied that the master's findings were correct. Accordingly, he directed that the matter be placed upon the next ensuing argument list so that each party might present arguments to the court sitting en banc on the issues whether the evidence is sufficient to establish (a) jurisdiction and venue in this court, (b) indignities to the person of plaintiff, (c) willful and malicious desertion of plaintiff by defendant, (d) indignities to the person of defendant. In due course, the case came on for argument before the court en banc. Each party presented briefs and oral arguments on the issues raised. At oral argument, counsel for plaintiff conceded that a weak case had been presented by plaintiff on the ground of indignities. The issues are now before us for determination.

We are not satisfied that the record establishes the jurisdiction of this court. The law on the subject is

expressed at length in Verbeck v. Verbeck, 160 Pa. Superior Ct. 515, 517, et seq., as follows:

"Our divorce laws were not enacted for the benefit of non-residents and the fundamental policy of the Commonwealth forbids resort by strangers to its courts for the purpose of divorce. Dulin v. Dulin, 33 Pa. Superior Ct. 4; Nixon v. Nixon, 127 Pa. Superior Ct. 407, 193 A. 132. This policy finds expression in the statutory provision (section 16 of the Act of May 2, 1929, P.L. 1237, 23 P.S. 16) that the libellant must be a bona fide resident of Pennsylvania for one whole year immediately prior to the filing of the libel. This requirement is strictly jurisdictional and cannot be waived by the parties, even with the consent of the court. As stated by Rice, P.J. in English v. English, 19 Pa. Superior Ct. 586, at page 596: 'Consent of a party as expressed by his appearance cannot, in divorce, create a jurisdiction over the subject-matter which the court would not otherwise have. No matter how expressed, consent of the parties, even with the consent of the court added, cannot give the court jurisdiction of a libel in divorce . . . unless the libellant shall have resided in the state at least one whole year previous to the filing of his or her petition or libel. . . . This prerequisite is not in the nature of a personal privilege or safe-guard which the respondent may waive, or the court, in its discretion, dispense with.'

" 'Residence' within the meaning of the statute means a 'permanent one with domiciliary intent.' Gearing v. Gearing, 83 Pa. Superior Ct. 423; Huston v. Huston, 130 Pa. Superior Ct. 501, 197 A. 774. In Starr v. Starr, 78 Pa. Superior Ct. 579, in a per curiam opinion, this court stated:' "Domicile" is a matter of intention; "residence" is a physical fact, and the term "bona fide residence" means residence with domiciliary intent, i.e., a home in which the party actually lives.' The general meaning and significance of domicile has

been thoroughly considered and reviewed in Pennsylvania decisions. In Dorrance's Estate, 309 Pa. 151, 163 A. 303, the Supreme Court said: 'One of the most satisfactory definitions of domicile is that stated by Story in his "Conflict of Laws": "By the term domicile in its ordinary acceptation is meant the place where a person lives or has his home. In a strict legal sense that is properly the domicile of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." ' This court in Gearing v. Gearing, 90 Pa. Superior Ct. 192, 195, approved the definition in Bishop on Marriage, Divorce and Separation, Vol. 2, sec. 88: 'Domicil is the place in which, both in fact and intent, the home of a person is established, without any purpose to return to a former home; the place where he lives, in distinction from that where he transacts his business; the place where he chooses to abide, in distinction from that in which he may be for a temporary purpose; the place which he has chosen, in distinction from one to which he may be exiled or sent a prisoner, or being in the government service, to which he is ordered . . . it is the place which the fact and the intent, combining with each other and with the law, gravitate to and center in, as the home.'

"Every person has at all times one domicile and no person has more than one domicile at a time. Restatement of Conflict of Laws, sec. 11. When a domicile is once acquired it is presumed to continue until it is shown to have been changed, and when a change is alleged the burden is upon the one making the allegation to prove a residence in a new locality and an intention to remain there. Alburger v. Alburger, 138 Pa. 339, 10 A. 2d 888. The new domicile must be acquired by actual residence and the change must be 'animo et facto.' Price v. Price, 156 Pa. 617, 27 A. 291."

At the time of the master's hearing herein, plaintiff was a lieutenant in the United States Navy, stationed at Johnsville Naval Air Development Center, Bucks County. He was born August 22, 1927, at Malone, N. Y. His mother still resides there, at 33 Woodward Avenue. The record is silent as to when, where and under what circumstances he entered the naval service and as to his place of residence at that time. On May 29, 1952, he was married to Betty Jane Cherry at Norfolk, Va. The certificate of marriage is not clear as to his claimed residence at that time; it states:

"Residence: Oper. Tower N.A.S.

"City or County:

"Mailing Address. Norfolk, Virginia."

On December 7, 1962, in an action instituted by plaintiff, the above marriage was terminated by a decree in divorce awarded by the court of the Fourth Judicial Circuit of Florida in and for Duval County. Plaintiff was not questioned on the record before us as to where he claimed his residence to be at the time of the above marriage and divorce, or at any time between the date of his birth and the date of the above divorce.

On October 18, 1966, plaintiff married defendant at Malone, N. Y., where she had been residing. The certificate of marriage states that plaintiff's residence also is at Malone. The parties separated at Malone, N. Y., on December 28, 1966. A separation agreement was prepared by defendant's attorney at her instructions. It recited that the residence of plaintiff was at Warminster, Pa.

At the preliminary interrogation of plaintiff at his first hearing in his quest for jurisdictional data, the master asked plaintiff what his residence was immediately prior to the marriage. Plaintiff replied that it was on ship in the Commander's Task Force at the Gulf of Tonkin (he had been there from May 18, 1964

to August 5, 1966). Then, the master asked plaintiff what was the first residence he and his wife, defendant herein, established after their marriage and for how long they resided there, to which plaintiff answered that they established it at Diplomat Apartments, Madison Street, Warminster, Pa., that he and defendant rented an apartment there on November 10, 1966, and moved there on November 15, 1966. The term of the lease was not disclosed. Plaintiff and defendant furnished the apartment.[1] They remained there, plaintiff testified, until December 23, 1966. The inquiry then proceeded:

"Q. And, I assume at this time, you again changed your residence?

"A. No, sir, we went home for Christmas.

"Q. Well, this was not a permanent change of address, was it?

"A. It turned out to be a permanent change for her.

"Q. Where was 'home'?

"A. Malone, New York.

"Q. How long did you and your wife remain in Malone, New York?

"A. I went back to duty the 29th of December."

The foregoing satisfied the master that the jurisdictional requirements had been established. He made no further inquiry until the jurisdiction was attacked by defense counsel on cross examination of plaintiff at the third and final hearing of the master.

In such cross-examination by defense counsel and further examination by the master, defendant testified as follows: that he had never voted in an election, national or otherwise; is not registered to vote in Pennsylvania or in New York and has never been registered to vote at any place. He holds a New York driver's license issued to him at 33 Woodward Avenue, Malone, N. Y. He does not have to have a Pennsylvania Opera-

tor's license because under the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, C. 888, sec. 1, 54 Stat. 1178, his New York license is legal in Pennsylvania. His automobile is registered in Pennsylvania and bears a Pennsylvania tag. The Navy Department records show his permanent residence as 33 Woodward Street, Malone, N. Y., and:

"A. My permanent residence now is 1 Madison Avenue, in Warminster, Pennsylvania. My home of record, which is normal for all the military, is my mother's address. You have to have a home of record, and most of the time it's your mother's or father's address. People in the Navy for twenty years have used their mother's address as their permanent address. That is their permanent address in most cases. Usually that is where they can always get ahold of you.

"Q. This address in New York, that you gave, that's your mother's address, is it?

"A. That's my mother's address. It is a permanent home of record.

"Q. But you consider yourself a permanent resident of the Commonwealth of Pennsylvania?

"A. Yes, sir.

"Q. So that you would not be a citizen of the State of New York?

"A. No, I'm not a resident of the State of New York. I haven't resided in New York in over twenty years.

"BY MR. FOY:

"Q. Do you intend 1 Madison Avenue, Warminster, Bucks County, Pennsylvania to be your home?

"A. To be my home permanently?

"Q. No. Do you intend it to be your home at this time?

"A. Yes, it is my home. It is my businesss address, where everything is received. All my mail is received there.

"Q. Did you intend, when you established your domicile at 1 Madison Avenue, Warminster, Bucks County, Pennsylvania, did you intend that to be your permanent address?

"A. Yes.

"Q. And did you also consider that to be your domicile; that is, where you will always make your home?

"A. Yes. That is where I make my home."

"In determining the existence of a domiciliary intention, all the circumstances must be considered and the evidence necessary to constitute domiciliary intent varies with the case. The proof of change of a domicile does not depend upon any particular fact but upon whether all the facts taken together tend to establish a new, fixed and permanent residence": Verbeck v. Verbeck, supra, p. 520.

On the record before us, it is doubtful that plaintiff regarded any place as his true, fixed home and principal establishment to which he had, whenever he was absent, the intention of returning, a residence intended to last continually without change, unless it was his mother's home at Malone, N.Y. It may have been that he considered his "residence" to be wherever he hung his uniform, his duty station. In answer to the master's query as to his residence before his marriage, he replied that it was on a ship in the Tonkin Gulf. On the other hand, he probably told the marriage license clerk that his residence was Malone, for that is what appears on the marriage certificate. But he testified that he had not been a resident of New York in over 20 years. Perhaps, "residence" meant to him the place he was for the time being, his business address for the time being. True, he did testify that he considered himself to be a permanent resident of Pennsylvania, that he considered 1 Madison Avenue, Warminster, Bucks County, Pa., to be his "permanent residence,"

that it is his home, his business address where everything is received, where all his mail is received, that he intended it to be his permanent address, but when asked the question which would fix the permanency of his intention, "Q. And did you consider that to be your domicile; that is, where you will always make your home?", he gave the equivocal answer "A. Yes, that is where I make my home," thus leaving unanswered how permanent permanent is, in his mind.

Even if plaintiff believed that his testimony was a statement that it was his intention when he moved into Bucks County, his home would thereafter, without change, remain there continuously as a place to return to from his various naval duty assignments and stations, his testimony without evidence of acts corroborative of the expressed intention would not be sufficient to establish the jurisdiction of this court. ". . . declarations alone of domicile are self-serving and insufficient; they must be followed by acts which are in accordance with the declaration": Dorrance's Estate, 309 Pa. 151, 163 Atl. 303; Alburger v. Alburger, 138 Pa. Superior Ct. 339, 344. The only acts on plaintiff's part which tend in any degree to indicate residence with domiciliary intent on his part in his move into Bucks County are the leasing and furnishing of the apartment, the registration of his car with the Pennsylvania Department of Revenue and the fixing of his business address at the apartment. They are not very persuasive. It would hardly be expected that a recently married officer on duty at a shore station would live at bachelor officer's quarters, leaving his bride residing in another State. The term of the lease is not shown. A long-term lease would be more indicative of permanency than a short-time lease. The car was purchased shortly before the parties moved into the Warminster apartment. The place

where a person lives is the most likely place for the registration address of a privately owned vehicle and for a mailing address. The fact that the separation agreement between the parties states that defendant resides at Warminster does not assist plaintiff. He took no part in the drafting of the agreement; it was drafted by defendant's attorney at her instructions.

On the other hand, the fact that plaintiff had not had the Navy Department change on its records his permanent address from 33 Woodward Avenue, Malone, N. Y., to Warminster militates strongly against domiciliary intent on plaintiff's part to establish a permanent home in Bucks County. If he had such an intent at the time of marriage, it is surprising that he did not have the Navy change that address from his mother's home to the home he was establishing for his wife. There is no evidence that he had intended to do so before he found that the matrimonial journey was not to his liking. After the marriage had gone on the rocks, it is understandable that he would not request the Navy Department to make such a change as, during plaintiff's absence, there would be nobody to receive naval communications at that address, one would assume. One would also assume that plaintiff's residing at Bucks County would be no more permanent than his tour of duty at a naval station in this area and that plaintiff so intended.

In our research of precedents, we find that the factual situation in Nixon v. Nixon, 127 Pa. Superior Ct. 407, reversed 329 Pa. 256, is quite similar to the facts before us. In that case, the divorce action was instituted in Pennsylvania by the husband, a career officer in the United States Army. The Superior Court stated the facts to be that the libellant was born at Gettysburg where he lived until 1915 when he was appointed a cadet at the United States Military Acad-

emy at West Point. He was married in 1922 in Massachusetts. After his graduation from West Point, he was assigned to different Army posts until 1932 when he became attached to the Ordnance Department in Washington, D. C. In official Army documents he was required to execute, he consistently gave his home address as 154 Carlisle Street, Gettysburg, Pa., where his mother lived. In five applications filed by him in the Bureau of Patents, he gave his residence as Gettysburg, Pa. On September 16, 1932, libellant purchased a home at 3500 Macomb Street, N.W., Washington, D. C. The deed therefor and the mortgage he executed stated his residence to be in the District of Columbia. Testimony was offered, in behalf of respondent, of statements libellant made to various persons that he had bought this property for permanent residence and that he contemplated retiring from the Army. In 1933, he made application to operate a motor vehicle and for a certificate of title and gave his residence as 3500 Macomb Street, N.W., Washington, D. C. In 1934, he applied for a duplicate certificate, giving his address when the original certificate was issued as Macomb Street and his present address as 3601 Connecticut Avenue, Washington, D. C. He filed personal tax returns in the District of Columbia in 1933 and 1934 (as he was required to do under District of Columbia law, having resided there for more than three months) setting forth therein his residence as 3500 Macomb Street, N.W., Washington, D. C. After he had graduated from West Point, he never actually resided in Gettysburg and made but few and very brief visits to his mother. The master found that libellant had a bona fide residence at Gettysburg. The lower court found that although libellant may be a citizen of Pennsylvania, he did not have, when his divorce action was brought, an actual residence in this State with a

domiciliary intent. The lower court was affirmed by the Superior Court. Upon further appeal to the Supreme Court, the latter made the following additional statements as to the testimony in the original case, namely:

". . . At the original hearing it was shown that Nixon, an army officer, was subject to be ordered anywhere by the War Department, and, as such officer, could not claim any station as a permanent home—generally these officers call their place of birth or the residence of their parents their home . . . He testified that he had never established a residence elsewhere, that though he had never voted, he never registered elsewhere to vote; he annually gave his residence to the War Department as Gettysburg; his mother was still living there, and at his home he kept various of his personal belongings. This, being uncontradicted, adequately supported the master's conclusion that appellant's bona fide residence was Gettysburg."

The Supreme Court also stated:

"Appellee's theory was that since appellant purchased a house in Washington he intended to remain permanently at that place, but an examination of the testimony by depositions shows this circumstance was not sufficient to disprove residence at Gettysburg. The burden was on appellee to prove a changed residence and that the alleged new dwelling really constituted a new residence. This was flatly contradicted by the depositions on the other side, indicating that the house was bought according to the custom of many such government employes who, assigned to service in Washington for a period of time, purchase houses rather than rent them, to avoid exorbitant rental charges. They consider it quite easy to dispose of such property either by sale or lease in the event of transfer

to a new post. There being but 'oath against oath' as to appellant's state of mind on acquiring the Washington dwelling, appellee did not bear the burden thrust upon her by the presumption that the original bona fide residence of appellant remained such. The fact appellant paid a tax required by the laws of the District of Columbia on all persons 'maintaining a place of abode' there, does not create a residence in that place, for the statute expressly recognizes that such persons may have a 'legal residence' elsewhere. Nor does the designation of residence contained in appellant's automobile license have any weighty significance. It is not uncommon for persons temporarily in another state to have their cars licensed in that state."

As it was the burden upon the respondent appellee in the Nixon case to establish change of residence by libellant from Gettysburg, Pa., to Washington, D. C., so the burden was upon plaintiff in the case before us to establish a change of bona fide residence from Malone, N. Y., to Warminster, Pa. He has failed to meet that burden. Compare Alburger v. Alburger, 138 Pa. Superior Ct. 339.

In view of our conclusion that we are without jurisdiction to entertain this action, we need not dispose of the remaining issues, hereinabove mentioned.

### ORDER

And now, July 14, 1970, for the reason expressed in the foregoing opinion, the recommendation of the master that a decree of divorce be entered is not approved, the complaint and amended complaint of plaintiff are dismissed and a decree of divorce is denied and refused. Costs shall be paid by plaintiff.