Rosenberg *v.* Rosenberg, Appellant.

Argued March 22, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Charles M. Solomon,* with him *Leonard J. Schwartz,* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Colbert C. McClain,* for appellee.

OPINION BY DITHRICH, J., July 23, 1948:

For a period of three years prior to March 17, 1947, the parties to this divorce action lived together at 1101 Duncan Avenue, Yeadon, Delaware County, Pennsylvania, in a house owned by them as tenants by the entireties. On the aforesaid date respondent left the common domicile of himself and wife and went to live with his parents at 734 Church Lane, Yeadon. Libellant, being without sufficient funds to support herself and the couple's three-year-old daughter, returned to the home of her parents at 5748 Pine Street, Philadelphia, her birthplace and place of residence until January 3, 1937, the date of her marriage to respondent, taking the daughter with her.

On May 12, 1947, she filed her libel in divorce a mensa et thoro giving her residence as 5748 Pine Street,

Philadelphia. In his answer to the libel respondent denied that the residence of the libellant was as stated, and on the contrary averred that at the time of filing the libel she was a resident of Yeadon, Delaware County. In due course libellant obtained a rule for counsel fees and alimony pendente lite. Respondent then obtained a rule to show cause why the petition for alimony and counsel fees should not be stricken from the record on the ground that at the time of filing the petition, as well as at the time of filing the libel, libellant was not a resident of Philadelphia County but a resident of Delaware County. Depositions were taken and, after argument, the rule to strike off the petition was discharged and the rule for counsel fees and alimony was made absolute. Respondent has appealed from both orders.

The Divorce Law of May 2, 1929, P. L. 1237, 23 PS § 15, as amended, provides: "All petitions or libels for divorce shall be exhibited to the court of the county where either libellant or respondent resides." The venue has been questioned largely because libellant continues to reside part of the time in what was formerly the common domicile. She freely admitted that she maintains a part-time residence there, where she keeps part of the clothing for herself and daughter, but she stated that she did so for the greater convenience of her husband in visiting his daughter and in the hope that he will some day return to live with her at that address. She testified that she would be glad to have him back.

The law of the Commonwealth as stated in *Betz v. Betz*, 103 Pa. Superior Ct. 306, 308, 157 A. 359, that "There can be no question that husband and wife may have separate and distinct residences and that the residence of the husband does not determine that of the wife so as to govern her right to a divorce," is not questioned by respondent. He does, however, question the validity of libellant's residence in Philadelphia. In *Alburger v. Alburger*, 138 Pa. Superior Ct. 339, 343, 10 A. 2d 888, this Court held: "When a residence is once acquired, it

is presumed to continue until it is shown to have been changed, and when a change is alleged, the burden of proving it rests upon the one making the allegation, and two things are indispensable thereto: First, a residence in a new locality, and, second, the intention to remain there." In *Huston v. Huston*, 130 Pa. Superior Ct. 501, 508, 197 A. 774, it was said: " 'Residence' within the meaning of the statute means a 'permanent one with domiciliary intent': Gearing v. Gearing, 83 Pa. Superior Ct. 423. In Starr v. Starr, 78 Pa. Superior Ct. 579, it was said: ' "Domicile" is a matter of intention; "residence" is a physical fact, and the term "bona fide residence" means residence with domiciliary intent i. e., a home in which the party actually lives.' "

Libellant in this case has met the burden of proving that her new domicile was acquired by actual residence and the change was "animo et facto."

As stated in the opinion of the learned president judge of the court below: ". . . the respondent first removed from the common domicile of the parties and went to reside with *his father and mother* . . . He did not provide adequately for his wife's support and she, following his example, returned to the home of *her parents* . . . taking her daughter with her.

"The libellant apparently brought her action in divorce, a mensa et thoro, with the hope that the respondent would ultimately return and live with her . . . With that thought in mind, she spent a substantial part of her time at what had been their former home . . . going there once a week and sometimes more often. But she kept most of her clothes at 5748 Pine Street, where she and her parents resided.

"It seems . . . entirely natural that the wife, having been deserted by her husband, should have returned to live with her parents. It was just as natural for her to do that as it was for the husband to return to the home of his parents. That was the home in which she was born and raised, the residence from which she was married and the place where she had the protection of those who

were most interested in her welfare. The mere fact that she cherished the hope her husband might come back to her, and therefore spent part of her time at 1101 Duncan Avenue, Yeadon, does not deprive her of her bona fide residence in Philadelphia County."

The court awarded libellant $50 counsel fees, and alimony in the sum of $50 a week. Respondent has also been ordered by the Municipal Court of Philadelphia to pay $20 per week for the support of the child. He does not object to the amount of counsel fees, but he does object to the amount of the order for alimony.

Respondent is president of the Armin Sales Co., a corporation engaged in wholesale house furnishings and manufacture of lamps. The business was started by respondent in 1937, and as of September 2, 1947, the corporation assumed the assets and liabilities of the predecessor proprietorship. The other incorporators and officers are Harry Rosenberg, brother of respondent, and Meyer Rosenberg, his father. Because of the corporate setup it is difficult to ascertain the exact income of respondent. He testified that the business is operating at a gross profit of approximately 16 2/3% and that it grosses from $2,000 to $4,000 a week. Notwithstanding the very substantial profit of the business, respondent testified that he had a drawing account of but $60 a week and that his brother, who has only a 25% interest in the business, is unmarried and lives at home with his parents, has a drawing account of $40 a week. He also testified that his income tax return for the year 1946 showed a net profit to him of $9,115.64 and included the portion of the profit that was paid out to his brother.

Respondent urges us "to consider the fact that as a young man trying to build up a new business he is exercising a wise discretion in recapitalizing a portion of his profit, first, because, being in an unliquid form, it could not without sacrifice be withdrawn and, second, because the increased capital will lead to larger profits in the future, which will reflect itself in larger alimony pay-

ments to libellant." That may well be true, but libellant should not be required to sacrifice the alimony payments to which she is presently entitled in the expectation that her sacrifice will be rewarded by larger alimony payments to her in the future. If, as respondent contends, he cannot meet his obligations on his present drawing account, there would appear to be no sound reason why it should not be increased, at least to an amount adequate to provide properly for the support of his wife and child.

Orders affirmed.