**Sheehn Appeal**

*Blair V. Pawlowski*, for petitioner.

*Edward F. Peduzzi*, for Commonwealth.

McDONALD, J., May 4, 1962.—This matter is before the court upon a petition for review of an order of the Pennsylvania Game Commission revoking the hunting privileges of Leonard C. Sheehn, hereinafter referred to as petitioner. The petition was filed under provisions of the Act of June 3, 1937, P. L. 1225, art. III, sec. 315, 34 PS §1311.315(6).

Petitioner was apprehended in Cameron County on August 17, 1959, by a fish warden and a game protector for fishing and hunting without a nonresident fishing and hunting license. Formal charges were filed before a justice of the peace, to which he pleaded guilty and paid the fine and costs.

At the time of the arrest, he was operating a truck bearing Ohio license plates. He also had in his possession an Ohio operator's license, bearing the address 2303 Logan Avenue, Youngstown, Ohio.

On October 23, 1959, the commission adopted a resolution revoking petitioner's hunting privileges for

hunting without a nonresident license, from September 1, 1960, to August 31, 1962. In accordance with the requirements of section 315 (5) of the Game Law, notice of the Board's action was sent by registered mail to 2303 Logan Avenue, Youngstown Ohio, on November 13, 1959, but returned to the commission, marked "unclaimed." The envelope and notice have been admitted as Commonwealth's exhibit no. 2.

On August 21, 1961, petitioner was again apprehended by the game warden and charges filed against him, as follows: (1) For securing a license while hunting license had been denied; (2) for possession of a deer unlawfully killed; and (3) for hunting while hunting rights had been denied. He was found guilty on (2) and (3) above, and made a field settlement acknowledging guilt on (1) above. At the time of this second arrest, petitioner was residing at 1102 Inverness Avenue, Youngstown, Ohio.

On October 23, 1961, the commission adopted a resolution revoking petitioner's hunting privileges from September 1, 1962, to August 31, 1965, for the offenses listed in the preceding paragraph. A notice of revocation was mailed to him, and receipt acknowledged by return receipt.

This appeal is from the order of October 23, 1961. In his petition, he avers that he is a resident of the Commonwealth of Pennsylvania, with address at Box 146A, R. D., Nanty-Glo, Cambria County, and that he did not receive notice of the commission's order of October 23, 1959, revoking his hunting privileges.

Petitioner testified that he is a resident of the Commonwealth of Pennsylvania, having resided in Nanty-Glo until 1955, at which time his house was sold and he moved to Carlisle, where he resided until the spring of 1956. He then resided in Duryea and Middletown, Pa., and in 1957 returned to Nanty-Glo. He is self-employed as a contractor, and has constructed homes

in Pittston and Blairsville, Pa., and Youngstown, Ohio. He has lived in Youngstown since 1957 at three addresses: 2303 Logan Avenue, 1102 Inverness Avenue, and 1102 Detroit Avenue. For a short period of time, he also resided in Lowellville, Ohio. His children have attended school there since 1957. He owns a station wagon and truck, both of which are registered in Ohio, and he has an Ohio operator's license. He cast his vote in the 1961 primary election in Youngstown, Ohio. He also testified that in 1961 one of his vehicles was registered in Pennsylvania, and he also has a Pennsylvania operator's license showing the address of 167 Columbia Street, Duryea, Pa.

Petitioner testified that he plead guilty to the charges on August 17, 1959, after being questioned for hours. He explains his acknowledgment of guilt on a field settlement on August 21, 1961, of hunting while hunting rights had been denied, when he verified that in fact the commission had entered an order on October 23, 1959, revoking his privileges. For some inexplicable reason, even though the revocation order had been submitted to all licensing agents, he was issued a license.

At the conclusion of the Commonwealth's case, a motion was made to dismiss the petition for lack of jurisdiction, contending that petitioner is a nonresident (one of the charges to which he plead guilty August 17, 1959), and, therefore, under section 315 (6) the petition for review must be filed in the Common Pleas Court of Dauphin County.

Although this motion was overruled, we are satisfied after a review of the entire record it should have been sustained.

Petitioner argues (1) that he was a resident, (2) that the question of jurisdiction could only be raised by preliminary objections under Pa. R. C. P. 1032, and having been made at the hearing it was too late.

A resident, for the purpose of obtaining a "resident license" (at a lesser cost than that for a nonresident license) is defined in section 301 of the Game Law as ". . . any person who has been a bonafide resident of this Commonwealth for a period of sixty days next preceding his application, . . ." It is petitioner's contention that he maintained a residence at his father's home in Nanty-Glo, and always intended to return there; that in fact he did return periodically for varying periods of times; that in his work he constructed homes, lived in them at various places until sold, and at no time did he intend to reside other than in Nanty-Glo.

He argues that his domicile is Nanty-Glo, and apparently construes "domicile" and "residence" as synonymous. His confusion of the meaning of the two terms is well warranted by the loose use of the term "bonfide resident" in section 301 above. In our view, the latter term actually means "domicile." In Obici Estate, 373 Pa. 567, the term "principal residence" under the Fiduciaries Act was held synonymous with "domicile." It seems to us that the term "bonafide resident" if construed to mean a physical residence within the Commonwealth, as defined in the law (see Robinson v. Robinson, 362 Pa. 554; Lesker Case, 377 Pa. 411; Rosenberg v. Rosenberg, 163 Pa. Superior Ct. 138), would mean that those persons who are out of the State for long periods of time on business or vacation, even though their principal residence is Pennsylvania, would be unable to secure a resident license. We do not believe it was the intent of the legislature to so restrict the issuance of license to persons under these circumstances.

There can be no question under the facts presented in this case the actual physical residence of petitioner is Youngstown, Ohio, and has been since 1957. Nor are we satisfied if bonafide resident" means "domicile." as we

believe it does, that he is domiciled in Pennsylvania, as he contends. An expression of intent is not sufficient to establish "domicile" if the actual state of facts indicate the contrary: Lesker case, supra (416). We are satisfied when one leaves his former home in 1955, returns for a short period in 1957, and thereafter resides at several addresses in Ohio; registers his vehicles (with the exception of one vehicle in 1961) in that state, obtains an operator's license, sends his children to school, and votes in a primary election (1961), that the evidence, contrary to his declared intention to maintain a domicile in Pennsylvania, is overwhelming.

We are satisfied he is both a resident of and domiciled in Youngstown, Ohio.

Petitioner's argument that the Commonwealth, by failing to file preliminary objections under Pa. R. C. P. 1032, raising the question of jurisdiction, thereby waived the right to do so during the hearing, is without merit. Under rule 1032 (2), the court is required to dismiss the action when it determines it lacks jurisdiction. Failure to preliminarily raise the question is not a waiver, and in fact the court may act sua sponte at anytime it becomes apparent it lacks jurisdiction. Since jurisdiction of petitions for review by nonresidents is vested solely in the Common Pleas Court of Dauphin County, and since petitioner had plead guilty in 1959 to the charge of hunting without a nonresident license, (and he still resides in Ohio) his petition should have been filed in that court.

We are satified that petitioner is nonresident of the Commonwealth of Pennsylvania and, therefore, this court lacks jurisdiction to decide his petition for review. It must be dismissed.

Although we have decided the petition must be dismissed because of a lack of jurisdiction, we will briefly discuss petitioner's second point of argument that, having failed to receive notice of the revocation on October

23, 1959, the second revocation founded on charges growing out of the first, is invalid.

Section 315 (5) of the Game Law provides that written notice of a revocation shall be sent by registered mail to "his last known address," or "delivered in person by a representative of the commission." At the time of his arrest in 1959, petitioner's last known address was 2303 Logan Avenue, Youngstown, Ohio. This was indicated by his truck registration and operator's license. He admits that at the time he lived there, but moved shortly thereafter. In accordance with the aforesaid requirement of the above provision of the Game Law, registered mail notice with return receipt requested was sent to that address less than three months later. The envelope and notice were admitted as exhibits. The envelope was marked "unclaimed." In our opinion, the statute only requires that notice be sent to the last known address by registered mail, or in lieu thereof delivered in person. Either method was sufficient.

Since petitioner had plead guilty to the charge of hunting without a nonresident license, and his address at that time was given as 2303 Logan Avenue, Youngstown, Ohio, there was no obligation on the part of the commission to send a letter or a notice of revocation to the Nanty-Glo address, which petitioner now contends is his domicile and residence, and was at that time. If personal service of the notice of revocation was required, such would have been stated in the law.

We are satisfied the requirements of the statute were met, and it is now futile to argue that because petitioner had no actual notice of the revocation, the second revocation is invalid, since it was made on offenses arising from the first. The failure to receive actual notice of a revocation, if the requirements of notice are otherwise complied with, does not invalidate it. Nor is it rendered null and void by the fact that a li-

censing agent inadvertently issued him a license for the year 1961 while the revocation was in effect.

We are satisfied the petition for review must be dismissed, and accordingly make the following

### Order

Now, May 4, 1962, after hearing and upon consideration of the record and briefs, the petition of Leonard C. Sheehn for a review of an order of the Pennsylvania Game Commission, dated October 23, 1961, revoking his hunting privileges for the period September 1, 1962, to August 31, 1965, is dismissed at the cost of petitioner.