## Stabile Registration Case.

Argued January 11, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*B. Robert Averbach,* for appellant.

*M. Barney Cohen,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 20, 1944:

This is an appeal from an order of the Court of Common Pleas of Allegheny County striking the name of the appellant from the registry list of voters in the 8th District of the Third Ward of the City of Pittsburgh. The appellant owns a dwelling house at 1306 Bedford Avenue in that district and ward. It contains eight rooms, four of them being bedrooms. It is occupied permanently by James Suriano, his wife, two young sons and two young daughters. The children range in age from one year to nine years. Suriano gets "rent free" but he maintains the home and the contracts for gas and for electricity are in his name. It is conceded that at this address the appellant resided all his life up to 1930. He claims that this has been his legal residence since 1930 also, except for a brief period when he resided in a hotel. He never voted from any other residence. In 1930 he purchased a home in Mount Lebanon Township, where, so he testified, his children had lived "practically all their time." He has domestic help there but has none at the Bedford Avenue house. Mrs. Suriano manages

the latter home and Stabile and his wife are privileged to sleep, dine and entertain in that home whenever they choose to do so.

Stabile was asked these questions and made these replies:

Q. How many nights a week do you stay at 1306 Bedford Avenue?

A. Two or three. Sometimes a whole week. Sometimes longer than that. Sometimes I stay away from the place. I don't have any set time.

Q. Your children never stay there?

A. Once in a great while.

Q. Where are their clothes?

A. 515 Meadowcroft. [Mt. Lebanon]

Q. Mr. Stabile, your children live in Mt. Lebanon, don't they?

A. I said yes.

Q. Where do your children go to school?

A. Mt. Lebanon.

Q. Where do you sleep?

A. 1306 Bedford Avenue.

Q. You only sleep there a couple nights a week, don't you?

A. I said, sometimes weeks. Sometimes a couple nights. Sometimes I don't sleep there.

Q. Sometimes you sleep in Mt. Lebanon all week?

A. Oh yes.

Mrs. Stabile testified that she buys all her groceries in Mt. Lebanon and has "no dishes or pots or pans" at the Bedford Avenue house. She was asked: "When you have a family dinner, you usually eat in Mt. Lebanon?" and she replied: "On Sundays we do" and that she eats meals with her husband at the Bedford Avenue address "once-in-awhile".

It is clear from the reading of this record that Stabile's home, i.e. his legal residence, is in Mt. Lebanon and that since 1930 he has attempted to maintain a "voting residence" at 1306 Bedford Avenue, Pittsburgh.

The Act of June 3, 1937, P. L. 1333, sec. 704, declares that "the place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart" . . . Stabile and his wife have *not* separated and do *not* live apart. They and their family are a unit and their only family home is in Mt. Lebanon. Stabile calls his Mt. Lebanon home his "summer home," but his three children reside there *all the year around* and go to school from that home. There is the only place where this family "keeps house", as Mrs. Stabile's testimony indicates. The Restatement of Conflict of Laws, Sec. 13, declares as follows: "A home is a dwelling place of a person, distinguished from other dwelling places of that person by the intimacy of the relation between the person and the place." Sec. 13, comment g, "When a person has his family living with him in a dwelling-place, it is strong evidence that the dwelling-place is his home." By every test laid down by the law this appellant's home in Mt. Lebanon township is his *legal residence*.

The courts have never accepted the contention sometimes made that a man's legal residence is wherever he *says* it is or where he says he *intends* it to be. An individual's legal residence is a question of fact which the state has a paramount interest in determining. A voter can vote only where his legal residence is; he can hold public office only if he resides in the political division his office serves. For example, the U. S. Constitution declares that a member of Congress must be an inhabitant of the state in which he shall be chosen and our State Constitution declares that a judge of the court of Common Pleas must reside in the district for which he shall be elected. The Pennsylvania Election Code of 1937, P. L. 1333, at page 1362, declares as one of the prerequisites of the right to vote in any election district, the following (Art. 7, sec. 701 (3)) : "He or she shall have resided in the election district where he or she shall offer

to vote at least two months immediately preceding the election." For purposes of certain kinds of taxation, particularly inheritance taxes, each state has a vital interest in the question of the legal residence of the person on whom or on whose estate the tax is to be levied. The *fact* of any person's residence, for any legal purpose, whether for voting, or for holding office, or for taxation, has never been determined merely by that person's "say so". In determining that question the state brushes aside all colorable pretences and finds the reality behind the guise.

In *Com. ex rel. Fortney v. Bobrofskie,* 329 Pa. 44, 196 A. 489, this court held that a man's legal residence was where he and his wife and children "resided as a family unit", though the man himself in that case (as does the man in this case) "spends part of his time in each place, and probably sleeps at the home which most suits his convenience at a particular time". We said: "It is clear that appellant wished to make his family home in the ninth ward yet retain a legal residence in the seventh ward. But the actuality of a man's residence is often better determined by his conduct than by his words". In *Fry's Election Case,* 71 Pa. 302, this court quoted with approval from Story's Conflict of Laws, sec. 41, as follows: "By the term 'domicil' in its ordinary acceptation, is meant the place where a person lives or has his home. In a strict legal sense that is properly the domicil of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Justice AGNEW added: "The term residence [as used in the Constitution] . . . means the place where the elector makes his permanent or true home, his principal place of business, and *his family residence,* if he have one." (Italics supplied.)

In *Dorrance's Estate,* 309 Pa. 151, 163 A. 303, which involved the payment of an inheritance tax of about $18,000,000, this court held that the legal residence of

John T. Dorrance, the decedent, was Pennsylvania, though he owned a home in New Jersey which he occasionally occupied and where he had previously legally resided, and where he maintained some household servants. He had continued to receive his personal mail at a New Jersey post office, paid a poll tax in that state until his death and he and his wife voted in that state. He maintained church affiliations in New Jersey. In the will he declared New Jersey to be the state of his domicile and during his life-time he made many declarations to the same effect. We held that these facts could not prevail against the fact that his family life centered in his Pennsylvania residence, that *most* of his household servants were on duty at that residence, that the expenses of the household in Pennsylvania greatly exceeded those of the New Jersey residence, that Dorrance's children made the Pennsylvania home the center of their social activities and they "were entered in schools" as residents of Pennsylvania; Mrs. Dorrance's accounts with merchants and department stores carried the address of his Pennsylvania residence; all of which we adjudged to be proof that the Dorrance residence in Pennsylvania was "the principal residence and main establishment of the family" and that the tax on the Dorrance estate was therefore collectible by Pennsylvania. We declared that Dorrance's affiliations with his New Jersey house were merely to "give color to his asserted intention to retain New Jersey as the place of his domicile", and we declared further that the "expressions of a man to the effect that he desires to retain a domicile of choice" in one place cannot prevail over acts which indicate that another abode "is [his] the principal residence and establishment". In other words, we decided that the "home" where a man's family life centered was his legal residence.

In the case now before us there can be no doubt that Stabile's family life centers in the home in Mt. Lebanon. There his young children, with whom he and his wife

stand in intimate relation, spend the entire year. From that home they go to school in the morning. To that home they return from school at night. For that home only, family groceries are purchased. In that home alone does Mrs. Stabile cook for her family. In that home only are family dinners served. The Bedford Avenue home in Pittsburgh is the home of another family, the Suriano family, where Suriano and his wife and child center their domestic life. When Stabile and his wife come to *that* home they come as they would come to a lodging house where they have the right to sleep and to eat and to entertain friends. It is not their permanent home, their place of domestic abode. It is a place where they are only transients, exactly as they would be at a hotel where they had similar privileges.

In the case of *Texas v. Florida,* 306 U. S. 398, the question of the legal residence of a wealthy man named Edward H. R. Green, who died in 1936, was adjudicated. Four states: Texas, Florida, New York and Massachusetts each claimed that the inheritance tax on Mr. Green's property should be paid to it. The opinion of the court was written by Justice, now Chief Justice, STONE. The following excerpts from Justice STONE's opinion apply in principle to the instant case: "If declarations were alone sufficient to establish domicile, the record would leave no doubt that Green was domiciled in Texas until the time of his death." "Mrs. Green . . . asserted . . . that Texas was the domicile of herself and her husband". ". . . When he [Green] had established himself there [Massachusetts] all the circumstances of his life indicated that his real attitude and intention with respect to his residence there were to make it his principal home or abiding place to the exclusion of others . . ." ". . . His conception of legal residence or domicile as a mental state whereby he could obtain certain political advantages and freedom from taxation does not weigh against this conclusion. He could not elect to make his home in one place in point of interest and attachment

and for the general purposes of life, and in another, where he in fact had no residence, for the purpose of taxation." *Feehan v. Tax Comr.*, supra (237 Mass. 169, 129 N. E. 292) ; . . . "Whatever his purpose may have been before that time, after the occupancy of the Round Hills residence [in Mass.] the physical facts of residence united with the major interests of his life to fix upon that as his place of domicile." *Gilbert v. David*, 235 U. S. 561, 570, 59 L. ed. 360, 364, 35 S. Ct. 164. "In point of fact and purpose it became his 'preeminent, headquarters', which is the essence of technical domicile.". . .

By parity of reasoning, we conclude in the instant case that "the physical facts of residence united with the major interests" of the appellant's life fix upon the home at Mt. Lebanon as the place of Stabile's domicile. That has been and is his "preeminent headquarters". If by merely obtaining the privilege of occasionally lodging and eating and entertaining in another man's habitation, a person can obtain "legal residence" there, our decision in the *Dorrance* case, supra, and the decision of the U. S. Supreme Court in the *Green* case, supra, must be erroneous. We do not so consider them.

Residence indicates permanency of abode as distinct from mere lodging or boarding. One of the rules for determining a person's residence, as prescribed in sec. 704a of the Election Code of 1937, supra, is the following: "That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning".

No one reading this record can doubt that the place to which Stabile "intends to return" when he is away from home is the place in Mt. Lebanon where his wife, with the aid of a servant, keeps house and where his three young children sleep and eat and have practically all their existence, except for the few hours five days a week when they are in school. *There* and not to the Suriano home in Pittsburgh is where he goes when he returns

from his labors, to the "bosom of his family". That is his home and his home is his legal residence.[1]

We hold that the decision of this court in the *Dorrance* case, supra, and in the *Fortney v. Bobrofskie* case, supra, requires us to affirm the action of the court below in deciding that the appellant's legal residence is 515 Meadowcroft Avenue, in the township of Mt. Lebanon and not at 1306 Bedford Avenue, in the city of Pittsburgh.

The order is affirmed.

---

[1] In *Brown v. Hows*, 42 S. W. 2d 210, the Supreme Court of Tennessee said: "Ordinarily little difficulty is experienced in determining the residence of a man with a family for it is, save in exceptional cases, where the family live or have their home, *Brewer v. Linnaeus*, 36 Me. 428." *State v. Savre*, 120 Iowa 122, 105 N. W. 387 3 L. R. A. (N. S.) 455, 113 Am. St. Rep. 452. As said by the Supreme Court of Iowa in *State v. Savre*, supra: "A person cannot live in one place and by force of imagination constitute some other his place of abode".