## Newport Township Election Contest.

Argued January 3, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James Lenahan Brown,* with him *Flood & Brown,* for appellant.

*Paul R. Selecky,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, March 15, 1956:

In this election contest, Kavetski, the losing candidate for tax collector of Newport Township, Luzerne County, in the November, 1953, elections, appeals from the decision of the court below dismissing the petition and declaring respondent Beeunas elected to that office. The contest involves the votes cast in the Sixth Ward of the Township, which embraces all of the buildings and grounds of the Retreat State Hospital.

The original petition alleged that 54 named voters were disqualified because they were non-residents, that one other voted twice, another's name was not on the official "Street List," and another whose name was on the voters' list did not vote, she being away on vacation. It then alleged: "12. That all the other individuals on the voters check list, in addition to those specifically set forth, supra, were not qualified electors maintaining a legal residence within the [ward] . . . and, therefore, the votes were false, fraudulent and untrue . . ." In addition, it contained an averment "that the conduct of the election, as conducted in the polling

place at the Retreat State Hospital . . . was tainted with fraud, corruption, and coercion to such an extent that the entire vote of the Sixth Ward . . . should be disallowed . . ."

The respondent moved to quash on the grounds that the general allegations of fraud were insufficient to warrant striking the entire vote, and that even if all 57 names were stricken off, the result would be the same. Thereupon the court determined there was sufficient basis for contest, but ordered that the petitioners amend paragraph 12 by stating the minimum number of persons, in addition to those already named, who were disqualified because of non-residence, and "that the number of such individuals when added to those specifically set forth . . . are sufficient to change the result of the election."

Amended paragraph 12 reads: "That the following named . . . individuals, in addition to those specifically set forth above, . . . were not qualified electors *maintaining a legal residence within the aforesaid voting district*, and, therefore, the votes were false, fraudulent and untrue [there follows the names of 46 voters] . . . Further, that when the allegations of this paragraph are coupled with and added to the allegations of the other paragraphs herein, they are sufficient to change the result of the election." (Italics supplied).

After hearing before an examiner appointed by the court, who cast out 22 votes (an insufficient number to change the result), the contestants argued to the court en banc that inasmuch as the Sixth Ward embraced all of the buildings of the Retreat State Hospital, which is owned by the Commonwealth and operated by the Department of Welfare, and that 107 of the persons who voted for respondent were employes of the hospital and resided in homes and buildings owned by the Commonwealth, all of those votes should be dis-

allowed under Article VIII, §13 of the Constitution. This provides: "For the purpose of voting no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State of the United States." A similar provision appears in the Pennsylvania Election Code of 1937, P. L. 1333, 25 P.S §2813. They also argued that violation of certain provisions of the election code pertaining to the organization of the election board constituted legal ground for rejection of the entire vote.

It is to be noted that nowhere in the petition is there any allegation specifically setting forth either of the foregoing contentions as basis for contest. The arguments were made only after the examiner permitted great latitude in the presentation of testimony and reference was made to these matters.

The court found that the buildings and grounds of the hospital had been owned and operated by the Luzerne County Institution District until 1941, when they were acquired and thereafter operated by the Commonwealth. It also found that of those voters named, 27 had been employed there prior to 1941, lived in cottages and apartments in 1953, and had no other homes; 18 had occupied rooms there prior to 1941, and had no other homes; 15 had moved there after 1941, lived in cottages and apartments, and had no other homes; and that 13 had moved there after 1941, lived in rooms, and had no other homes. It approved the examiner's rejection of 22 votes, but this was insufficient to change the result of the election.

The court below also found that the members of the election board acted de facto, committed no fraud or illegal act, and upheld the propriety of the election.

The proof did not establish the attacks made by contestants upon the qualifications of the voters, ex-

cept as noted, insofar as residence was concerned; nor that there was fraud or coercion as alleged. The court's findings in these matters, therefore, are fully supported by the evidence.

Because the named voters were permitted to and did live in state-owned quarters, and were required to move therefrom upon cessation of employment, the contestants seek to disenfranchise the voters under the constitutional and statutory provision. But they were not required to reside there, and under the proof had established their residences within the voting district. To give these provisions the construction and application to the facts contended for by contestants would be to lead to an absurd and unreasonable result. They were not intended to, nor do they, preclude establishment of a domicil where the state employe works. They mean only what they state,—that their residence cannot be changed *merely* by reason of their employment. As stated in 29 C.J.S., Elections, §24, page 48: "The fact, however, that a person does not gain or lose residence *merely* by reason of his presence or absence while in the service of the government does not preclude him from otherwise gaining a residence at the place so employed . . . to show a change of residence there must be some evidence other than his mere attendance at his place of employment, the constitutional and statutory provisions do not give the employee the right to elect his voting residence without becoming a resident in fact." (Italics supplied). A person employed by the Commonwealth may, if he sees fit, establish his domicil and gain residence at his place of employment by taking the proper and appropriate steps to do so—as these voters did. In fact, some of them were born there and have lived there since; and many of them have lived there since prior to the Commonwealth's acquisition.

In *Gollmar's Election Case,* 316 Pa. 560, 565, 175 A. 510, we stated: " 'A complaint of an undue and illegal election or a false return must be stated with clearness and precision and the petitioners held to due diligence to ascertain and specify the facts which, if sustained by proof, would require the court to set aside the result of the election.' " See also Pennsylvania Election Code of 1937, P. L. 1333, 25 PS §3456. In their petition these contestants made no reference to nor allegation of an improper selection of members of the election board. Nor did their proof establish any fraud or other improper action by the members so selected. Without regard to whether their allegations of fraud were sufficient to allow the proof offered as a basis for disallowance of the vote, the position of contestants cannot be sustained.

The facts in this regard were: Persons elected to the board in 1951 had not served at the 1952 election because of their understanding that they could not so serve by reason of their state employment. They did not, however, officially resign. A curbstone election was held at the November, 1952, election and the board thus constituted proceeded to serve. The same thing was done in 1953 elections. The court below declared these officials to be de facto, found they committed no fraud, and although sustaining the disallowance of some of the votes, found that their acts were not such as to taint the whole vote with fraud or impropriety.

The court properly concluded that this was not a sufficient basis for contestants' charges as established by our decision in *Krickbaum's Contested Election,* 221 Pa. 521, 526, 70 A. 852, where we said, inter alia: " 'The doctrine that whole communities of electors may be disfranchised for the time being, and a minority candidate forced into an office, because one or more of the judges of election have not been duly sworn, or were not duly

chosen, or do not possess all the qualifications requisite for the office, finds no support in the decisions of our tribunals . . . A person indisputably ineligible may be an officer de facto by color of election . . .' "

Contestants have failed to sustain their charges, and, with our determination on the merits, we do not deem it necessary to consider the questions of procedure and other matters raised by respondent as a basis for attacking the right of contest.

Order affirmed; costs to be paid as ordered by the court below in its supplemental order thereto.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The decision of the lower Court suspended the operation, in this case, of Section 13, Article VIII of the Constitution which reads: "For the purpose of voting no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State of the United States."

As I view the entire litigation, it behooved this Court to cut the cord which held this constitutional provision suspended in mid-air. It failed to do so and I accordingly dissent.