Starkey *v.* Smith (Commonwealth, Appellant).

Argued November 9, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Justin Blewitt, Jr.,* Deputy Attorney General, with him *Edward Weintraub,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Commonwealth, appellant.

*John W. Blasko,* with him *McQuaide, Blasko, Brown & Geiser,* for appellee.

*Richard L. Campbell,* with him *John R. Miller,* and *Miller, Kistler & Campbell,* for appellees.

OPINION PER CURIAM, November 18, 1971:

This is an appeal from a decree of the Court of Common Pleas of Centre County issued on October 26, 1971, granting a mandatory preliminary injunction. That decree, in effect, directed the Centre County Board of Elections to strike from the rolls of registered electors one hundred and ninety-five student registrants. The decree further directed the Board of Elections to determine the propriety of the registration of certain other student registrants. As a result of the Board of Elections' investigation, approximately three hundred and fifty more student registrants were struck from the Centre County rolls of registered electors.

All of the students struck had been previously registered pursuant to a Supplemental Temporary Restrain-

ing Order issued on September 16, 1971, by the United States District Court for the Eastern District of Pennsylvania in *Fair v. Osser,* C.A. No. 71-2212. That order extended the period of registration for students for five days beyond the date upon which it would have otherwise expired.

At the request of the Commonwealth, which had been permitted to intervene in the proceedings in the Court of Common Pleas, Mr. Justice ROBERTS granted a supersedeas on November 1, 1971, ordering *inter alia,* that the approximately five hundred and fifty students whose registrations are disputed be permitted to vote in the November 2, 1971, election and that their votes be segregated pending argument before this Court on the validity of the trial court's decree.

The basic question before this Court is whether plaintiff-appellees' challenge to the validity of the student registrations is a cause of action cognizable in equity. We conclude that it is not. The Pennsylvania election statutes provide an adequate, complete and appropriate statutory remedy for challenging registrations. Act of April 29, 1937, P. L. 487, §34, *as amended,* 25 P.S. §951-34.*

---

* The applicable statutory procedure for challenging the legality of an elector's registration is as follows: "At any time not later than the tenth day preceding any election or primary, any qualified elector . . . may petition the commission to cancel or suspend the registration of any registered elector . . . setting forth, under oath, supported by the affidavits of at least two adult persons, sufficient grounds for such cancellation or suspension, and also setting forth that due notice of the time and place when said petition would be presented had been given to the person so registered, personally, at least twenty-four hours prior to the presentation of the same . . . whereupon the commission shall forthwith cancel or suspend the registration of such elector, and amend accordingly the general and district registers and the other records affected, unless the person so registered shall appear and show cause why the same should

Nor are we persuaded by appellees' contention that the stipulation and order entered into on September 27, 1971, in the federal proceeding of *Fair v. Osser, supra,* precluded the Board of Elections from following the voter registration challenge procedures specified in the election statutes. That stipulation and order made it clear that any student was to be permitted to register ". . . at his college residence, *provided such student meets the residential qualifications of an elector as set forth in all other sections of the Constitution of Pennsylvania and the Pennsylvania Election Code of 1937."* (Emphasis added).

Moreover, even if we were convinced, and we are not, that the procedure followed by the plaintiff-appellees was appropriate, a reading of the record indicates that there was no evidence introduced to show that any individual student registrant could be struck under the provision of the Pennsylvania election statutes for striking registered electors. Act of April 29, 1937, P. L. 487, §34, *as amended,* 25 P.S. §951-34. Absent such evidence, there is no basis for the decree.

Accordingly, the decree of the Court of Common Pleas is vacated and the record remanded with directions to dismiss the complaint and to order that all ballots cast by registered student electors in Centre County pursuant to the special supersedeas of November 1, 1971, be tabulated and the results of said balloting be incorporated with the official returns of the general balloting in Centre County on November 2, 1971, as returned in accordance with the provisions of the Election Code. Each party to bear own costs.

Mr. Chief Justice BELL and Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

not be done." Act of April 29, 1937, P. L. 487, §34, *as amended,* 25 P.S. §951-34.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I am unable to agree with the opinion of the Court in either of its holdings, *viz.,* that the lower court lacked jurisdiction in equity to entertain this suit or that, if it had jurisdiction, it failed to exercise it properly. I therefore respectfully dissent.

The Court's opinion oversimplifies the case and is remarkable particularly for its omissions. It makes the flat assertion that there is an adequate remedy under the Pennsylvania election laws, *see* Act of April 29, 1937, P. L. 487, §34, *as amended,* 25 P.S. §951-34, but with no supporting facts or reasons. I thus deem it desirable to put the matter in some perspective.

## I. THE PROCEEDINGS BELOW

The appellants are the Secretary of the Commonwealth and the Attorney General of the Commonwealth, who sought and were granted leave to intervene as parties defendant. The appellees are the plaintiffs, certain qualified electors of Centre County, and the defendants, the County Commissioners of Centre County, who were sued in their capacity as the members of the Centre County Board of Elections.

The complaint herein averred that persons in attendance at Pennsylvania State University were permitted by defendants to register to vote "on the basis that said registrants were necessarily residents of the County of Centre by virtue of the fact that they possess living quarters on or about the campus" of the University or in the environs thereof. The complaint further alleged that such registrants may not be residents of Centre County or of the Commonwealth within the meaning of the Pennsylvania Constitution and the Pennsylvania Election Code,[1] and that registration

---

[1] The Constitution of Pennsylvania, Art. VII, Section 1, and the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, §1

of those who were unqualified violated the rights of all voters of the County, including plaintiffs, who were qualified electors. The complaint sought an injunction prohibiting defendants from permitting the registration to vote of any person "solely on the basis that such person while a student at the University possesses living quarters on or about the campus or in surrounding communities, and without proper investigation and determination of residency requirements under the Election Code." It prayed also for a striking from the rolls of all registrants who were not residents within the meaning of the Election Code.

The answer admitted the principal factual averments of the complaint, but denied that the student registrants were legally unqualified. It asserted that the legal qualifications of the student registrants who were registered in the period September 10, 1971, through September 23, 1971, were established by an opinion of the Attorney General dated September 9, 1971, and a directive of the Secretary of the Commonwealth, and, as to those registered in the period September 17 through September 23, 1971, that said legal qualifications were also established by a second opinion of the Attorney General dated September 13, 1971, another directive of the Secretary of the Commonwealth, and orders of the United States District Court for the Eastern District of Pennsylvania dated September 16, 1971, and September 27, 1971.

A hearing in the court below was promptly held on October 6, 1971. The Attorney General, by his deputy, appeared and was permitted to intervene. At his re-

_et seq., as amended_, 25 P.S. §2600 _et seq._, provide that all citizens, eighteen years of age or older, shall be entitled to vote if they have been a citizen of the United States for one month, resided in the state for a period of ninety days immediately preceding an election, and resided within the election district for a period of sixty days immediately preceding an election.

quest, the record was held open until October 14 for review in order to determine whether additional testimony should be introduced by the Department of Justice. No pleading of any kind was filed by the Attorney General nor did he introduce any evidence at the original or the continued hearing (held at some time between October 14 and October 26). On October 26, the court entered its decree granting the requested relief. The decree is reproduced in full in the margin.[2] This appeal followed.[3]

---

[2] "And Now, October 26, 1971, because of the urgency created by the impending election, the court makes the following preliminary order and decree:

"1. The County Board of Elections is enjoined from issuing registration cards and from registering all those student applicants, numbering 195, who, on the face of their application, under oath, clearly indicate either that they have not been a resident of the State of Pennsylvania for 90 days or have not been a resident of their election district for a period of 60 days prior to November 2, 1971.

"2. By reason of the irregularities in the initial registration process, the County Board of Elections shall forthwith make a determination as to whether or not all student applicants, other than those referred to in paragraph one, qualify as an elector in accordance with the provisions of the Pennsylvania Election Code of 1937 and the Constitution of Pennsylvania, and to distribute registration cards to those who qualify and assign them to their proper voting precincts.

"3. The County Board of Elections is directed to furnish to the court promptly the names and addresses of all students refused registration under paragraph two above, if any, and the reason for such refusal.

"4. In making the determination of voting residence under paragraph two above, the County Board of Elections shall in no way discriminate against students or make inquiries of them other than are required of all applicants under the Election Code of 1937."

[3] In the meantime, however, as appears from the briefs of the parties, the appellant Attorney General had sought an order in the federal court for the Eastern District of Pennsylvania restraining the enforcement of Judge Campbell's decree below. The motion was apparently refused on October 29, 1971. Appellant then peti-

## II.  Whether There Is Jurisdiction in Equity

It seems to me clear that the statutory remedy of the Code was *not* here adequate to protect the rights of qualified electors.[4]

The record makes it clear, and the Chancellor found as a fact, that the defendants were in no way discriminating against student applicants in the registration process; students were treated like all other registrants and were registered if they qualified as residents under the Election Code.[5]  While engaged in the registration process, defendants received on the morning of Sep-

---

tioned this Court for a special supersedeas, which was granted November 1, 1971.  This order permitted sequestered voting by the challenged registrants and stayed proceedings until disposition of this appeal.  Pursuant to the supersedeas, 489 students who had been refused registration for one reason or another, including 210 whose applications the Board had been unable to process, were allowed to vote.  Of these 489, according to the lower court's opinion, 268 voted.  It is their ballots which have been impounded pending the outcome of this appeal.

[4] There is a preliminary question as to the standing of the appellants to raise the question of jurisdiction.  No preliminary objections were filed below.  This is a prerequisite where the defense to a bill in equity is an adequate *non-statutory* remedy at law.  *See,* Pa. R. C. P. 1509(c) ; *Carelli v. Lyter,* 430 Pa. 543, 244 A. 2d 6 (1968).  Whether the same rule should apply where the defense is an adequate *statutory* remedy is an open question, expressly left undecided by this Court in *Devlin v. Osser,* 434 Pa. 408, 254 A. 2d 303 (1969), another case under the Election Code.  The issue could be avoided in that case because the Court held that the asserted statutory remedy was neither adequate nor exclusive.  In the instant case, however, the Court is holding to the contrary.  It should, therefore, consider whether the statutory remedy asserted is truly jurisdictional, incapable of being waived, or whether it goes only to the form of action and so is waived if not properly pleaded.

[5] Although the Attorney General's advisory opinion of September 9, 1971, suggested that the Election Code itself is discriminatory as applied to students, this argument was not made to the court below or to us.

tember 11, 1971, a telegram from the Secretary of the Commonwealth reading as follows: "You are hereby officially advised that the Attorney General Creamer ruled today 'that State College students are permitted under State Law to register to vote in the locality at which they are attending college or university.' Copy of official opinion to follow. I authorize and direct you to immediately begin registering all college students in accordance with this opinion." Commissioner Corman, one of the defendants, testified: ". . . according to the instructions as we understood them, [we] took student registrations at that time [September 13] merely on the fact of this telegram that they were students, they are attending the University and they shall be registered. . . . The only criteria that we used to register them was the fact that they were students and they were registered because it was our understanding that this was the only question that was to be pertinent to student registration." After the Attorney General's opinion letter to the Secretary of the Commonwealth, dated September 9, 1971, was received by the defendants, they continued the same practice. As defendant Corman stated, "Again, we primarily went by the fact that we were instructed that the Attorney General's ruling was that students were citizens of the county where they were attending college or university and should be registered to vote."[6]

---

[6] The opinion of the Attorney General of September 9, 1971, stated that college students are permitted under State law to register to vote in the locality at which they are attending a college or university "subject to certain durational residency requirements" established by the Pennsylvania Constitution, which the opinion discusses at length.

In a second opinion letter from the Attorney General to Secretary Tucker, dated September 13, 1971, dealing with extension of the voter registration period for students beyond September 13, 1971, the Attorney General referred to his earlier opinion of Sep-

By a federal court order entered September 16, 1971, in a class action[7] wherein all voter registration commissioners in Pennsylvania were defendants, the said defendants were enjoined from refusing to register students who otherwise qualify under the Attorney General's opinion letter of September 9, and the time for student registration throughout the Commonwealth was extended through September 20, 1971. Thereafter, on September 27, 1971, a Stipulation and Order were entered into, joined by the instant defendants, among others, whereby the parties agreed, with the approval of the federal court, substantially as follows:

1. The provisions of the Pennsylvania Constitution and Election Code mean that no person, while a student at an institution of higher learning, shall be prevented from registering and voting provided he meets the residential qualifications of an elector set forth in the Pennsylvania Constitution and Election Code.

2. Students registered to vote in accordance with the order of September 13[8] shall be deemed to be properly registered and entitled to vote.

3. The stipulation expressly does not admit the validity of the Attorney General's legal opinions in this matter or the power or authority of the Secretary of the Commonwealth in the premises.

---

tember 9 as one in which "I ruled that students of colleges and universities may register to vote at the locality of their college or university." Again, the Attorney General stated, "With the opinion of September 10 [sic], 1971, it is now clear that Pennsylvania law permits, and the United States Constitution compels registration of students to vote at the locality of their college or university."

[7] The case is captioned David Fair v. Maurice S. Osser, Civil Action No. 71-2212 in the District Court of the United States for the Eastern District of Pennsylvania. We have not been furnished with copies of any of the pleadings or proofs therein nor apprised of the issues as presented to the federal court.

[8] The record before us does not contain a copy of the order of this date.

It is clear that prior to this Stipulation and Order, filed after this suit was commenced, and while they were endeavoring to operate under the directives of the Secretary of the Commonwealth and the opinions of the Attorney General, the defendants would not have altered any registrations because of challenges under Section 20 of the Pennsylvania election laws, Act of April 29, 1937, P. L. 487, §20, *as amended,* 25 P.S. §951-20. It is obvious from the testimony that the information required by the challenge affidavits prescribed by this Section was considered irrelevant by the defendants. As the court below found, the sole criterion for the taking of student applications after September 11 was that the applicant had a matriculation card or some other evidence to show that he was a student; no effort was made to determine residence. Similarly, the Board of Elections would not have cancelled or suspended registrations under Section 34.[9] To say, as the Court does, that there was an adequate statutory remedy under these circumstances is to close one's eyes to reality.

Whether the defendant board members were correct or incorrect in their interpretation of the appellants' opinions and directives need not now be determined; rightly or wrongly they believed they were required to change their prior procedures. This suit is not, as appellants contend, a mass challenge leveled at student registrants; as the pleadings and evidence make clear, this is an action directed at the Board of Elections,

---

[9] The final federal court disposition did not change the situation. As the brief of the defendant Board members states, "Any appeal by the present Plaintiffs to the Board to protest the registration of any one or all of the nonresident students would have been fruitless. This is because the Board felt constrained to allow such students to vote because of the Supplemental Restraining Order and the Stipulation they had entered into." The record supports this statement.

asserting the misapplication of the law of voter registration as that law pertains to students. For appellants now to assert that plaintiffs could have received the relief to which they deemed themselves entitled from the very Board which was endeavoring to carry out appellants' contrary instructions seems to me to border on the frivolous.

### III.   WHETHER THE EQUITABLE JURISDICTION OF THE LOWER COURT WAS PROPERLY EXERCISED

The Court holds, alternatively, that assuming equitable jurisdiction to exist, there was nevertheless no basis for the Chancellor's decree. The reason for this conclusion is said to be that "[T]here was no evidence to show that any individual student registrant could be struck under the provision of the Pennsylvania election statutes for striking registered electors." This alternative holding is derived from a misinterpretation of the nature of plaintiff-appellees' equity action. It should again be emphasized that, while the relief sought and granted below may have resulted in the striking of individual students from the registration rolls, the thrust of plaintiffs' complaint below was directed at alleged improper registration procedures of the Centre County Board of Elections.

The record clearly supports the Chancellor's unchallenged finding of fact that, following receipt of the telegram of September 11 from the Secretary of the Commonwealth, "The sole criteria for the taking of the student applications was that the applicant had a matriculation card or some other evidence to show that he was a student. No effort was made to determine residence." The court, by paragraph 1 of its decree, see footnote 2, supra, enjoined the registration of 195 unnamed student applicants because from their sworn

applications it was apparent that they had not been resident in Pennsylvania for ninety days or a resident of their election districts for sixty days prior to November 2, 1971. By paragraph 2 of his decree, the Chancellor directed the defendants, the Board of Elections, to make a determination as to whether or not the remaining student applicants met the residence requirements of the Election Code. The defendants were directed to distribute registration cards to those who qualify and to assign them to their proper voting precincts. Under paragraph 3 of the decree, any refusals of registration were to be reported, with reasons, to the court, and under paragraph 4 the Board of Elections was expressly enjoined from discriminating against students in any way, including inquiries made to them in connection with applications.[10]

There is no question in my mind that the lower court was acting upon a correct major premise, *viz.*, that "[t]he manner, method and qualifications for voting are within the power of the State to prescribe as long as there is no discrimination and they are not in conflict with [the Constitution of the United States];" and that this includes reasonable requirements as to residency. *See Oregon v. Mitchell*, 400 U.S. 112, 27 L. ed. 2d 272 (1970) ; *Carrington v. Rash*, 380 U.S. 89, 13 L. ed. 2d 675 (1965). It was also acting upon an indisputable minor premise, *viz.*, that "this court believes and holds that there should be no discrimination against students. We also believe that they should not be given special privileges. They should be treated the same as

---

[10] This injunction was apparently out of an excess of caution, for the Chancellor found as a fact that "Centre County has never discriminated against students who apply for vote registration." As of September 13, 1971, 2318 registered voters, or 8% of the Centre County total, indicated their occupation as student.

everyone else in the community." The court fashioned its decree in an endeavor to carry out these principles. I think it did so properly, with one exception.[11]

The Attorney General as appellant here has not put in issue the propositions of his opinion letter of September 9, 1971. He has merely argued that the appellee Board of Elections, in its determination of residency, is limited to asking the precise questions set forth in Section 18 of the election laws, Act of April 29, 1937, P. L. 487, §18, *as amended,* 25 P.S. §951-18, and that it may not properly engage in the broader, nondiscriminatory inquiry apparently contemplated by Section 704 of the Election Code, Act of June 3, 1937, P. L. 1333, 25 P.S. §2814, in making the residence determination. Without in any way expressing an opinion on matters not before the Court, and without further prolonging this opinion, it will suffice to say that, in my view, the court below was correct in holding that the Board was not confined to the strait jacket advocated by the Attorney General. *Cf., Newport Twp. Election Contest,* 384 Pa. 474, 121 A. 2d 141 (1956); *Stabile Registration Case,* 348 Pa. 587, 36 A. 2d 451 (1944).

---

[11] Apparently through inadvertence the student application cards relative to the 195 students referred to in paragraph 1 of the decree were not offered in evidence, although they were in court and used by the parties and the Chancellor. The Attorney General is thus technically correct in asserting that the decree is based in part on matters dehors the record. In order to support paragraph 1 of the decree, the cards should have been introduced in evidence. Alternatively, the court could have directed the Board to process any challenges with respect to student registrants in accordance with Section 34 of the election laws and the residency requirements of the Constitution and Election Code. If I were writing for the majority, I would order a remand for revision of paragraph 1, while affirming the other portions of the decree.

Subject to the exception noted in footnote 11, *supra,* I would affirm the decree of the lower court.[12]

---

[12] In the special circumstances of this case, such affirmance would involve also a remand for the processing, in accordance with the lower court's decree, of the applications for registration of the students who voted on November 2 and whose ballots are presently impounded, but whose residence has not been determined by the Election Board at the time of this appeal.