Francis McCarthy, Appellant, v. Philadelphia Civil Service Commission, Appellee.

Argued April 1, 1975, before President Judge BOW-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR.,
MENCER, ROGERS and BLATT.

*William F. Coyle,* for appellant.

*Louis F. Hinman, III,* Assistant City Solicitor, with
him *James M. Penny, Jr.,* Assistant City Solicitor, *Ray-
mond Kitty,* Deputy City Solicitor, and *Sheldon L. Albert,*
City Solicitor, for appellee.

OPINION BY JUDGE WILKINSON, May 30, 1975:

This appeal involves the in-city residency require-
ments of civil service employees of the City of Phila-
delphia as contained in §20-101 of that city's Code of
Ordinances.[1] Francis McCarthy, appellant, was suspend-

---

1. Section 2 of that ordinance reads: "Every employee in
the Civil Service of the City shall be required to maintain his bona
fide residence in the City during the continuance of his employment
by the City. . . ."

ed and dismissed effective February 2, 1973, from his position as Fire Lieutenant because he was in violation of the residency requirements contained in the Philadelphia Home Rule Charter, Code of Municipal Ordinances and Civil Service Regulations. Appellant filed a timely appeal to the Philadelphia Civil Service Commission, which found, after a hearing, that appellant was not a bona fide resident of Philadelphia. On further appeal to the Court of Common Pleas of Philadelphia County, that court, without taking additional evidence, affirmed the decision of the Civil Service Commission. The instant appeal followed.

The record shows that appellant and his family owned property both in Philadelphia and in Villas, New Jersey. After certain incidents had occurred in the neighborhood of appellant's Philadelphia property, appellant's wife and nine of their ten children moved to the New Jersey property. Appellant and his oldest son continued to live in the house in the city for approximately ten months until the property was sold, because the house was continually subject to vandalism. Appellant then went to live with his mother in Philadelphia where he remained at least up to the time of his dismissal. It is his mother's home that appellant claims as his in-city residence in that he alleges he resides there while on duty, receives mail there, is registered to vote from that address, and uses that address for various financial purposes.

The testimony further discloses that appellant, depending on his work schedule, would usually spend two nights a week at his fire station, at least two nights a week at his mother's home, and two to three nights a week in Villas, New Jersey. Appellant's wife votes in New Jersey and his children attend school there. Appellant does not contest that he was still maintaining a marital relationship with his wife and that he is the sole support for his family.

When, as here, the lower court took no additional evidence, the review by this Court is to determine whether constitutional rights were violated, whether the local agency abused its discretion or committed an error of law, and whether the findings are supported by substantial evidence. *See City of Philadelphia v. Evans,* 14 Pa. Commonwealth Ct. 1, 320 A.2d 418 (1974), and *Shannon v. Civil Service Commission,* 4 Pa. Commonwealth Ct. 492, 287 A.2d 858 (1972).

Appellant argues the requirement that city employees be residents of the city is unconstitutional, because it infringes upon appellant's right to travel and violates the Equal Protection clause of the 14th Amendment of the United States Constitution. This very issue was raised and fully discussed in *Wright v. City of Jackson, Mississippi,* 506 F.2d 900 (5th Cir., 1975). There, the Fifth Circuit Court of Appeals held that a municipal residency requirement for firemen did not violate the "right to travel" nor any provision of the Federal Constitution. That court also determined that "numerous other decisions . . . have held that a municipal employee residence requirement bears a rational relationship to one or more legitimate state purposes, and hence is constitutional under the traditional equal protection test. [citing cases]." 506 F.2d at 903. In light of the complete review of this issue in the above opinion, it is unnecessary for us to pass further on the Federal questions raised.

Appellant next argues that the admission and use by the Commission of hearsay testimony in the form of various reports and statements was an error of law and tainted the Commission's findings. We disagree. Section 5 of the Local Agency Law, Act of December 2, 1968, P.L. 1133, 53 P.S. §11305, provides that local agencies shall not be bound by technical rules of evidence. This Court has held in *Bleilevens v. Pennsylvania Civil Service Commission,* 11 Pa. Commonwealth Ct. 1, 312 A.2d 109

(1973), that hearsay evidence can be admitted, but that an adjudication cannot be founded entirely on hearsay. In the instant case, it is clear that the Commission based its decision, not on the hearsay complained of, but on the testimony of appellant himself concerning how much time he spends in New Jersey and Philadelphia. Such action by the Commission does not constitute an error of law.

Appellant's final argument is that there was not substantial evidence to support the Commission's finding that appellant was not a bona fide resident of the city. It is well settled that a person can have more than one residence, but only one "legal residence" or domicile. See *Dorrance's Estate*, 309 Pa. 151, 163 A. 303 (1932), and *Goetz v. Borough of Zelienople*, 14 Pa. Commonwealth Ct. 639, 324 A.2d 808 (1974). In the instant case, the Commission and the lower court properly interpreted the term "bona fide residence" as used in the ordinance to mean domicile. *Alburger v. Alburger*, 138 Pa. Superior Ct. 339, 10 A.2d 888 (1939). The conclusion of where one's domicile is depends on the facts of each individual case. *Stabile Registration Case*, 348 Pa. 587, 36 A.2d 451 (1944), and *Goetz, supra.*

Here, the Commission determined that appellant's New Jersey residence was his domicile. In support of this conclusion, the record shows: that appellant no longer owned property in Philadelphia; that appellent spent on the average as much time in New Jersey as he did at his mother's home in Philadelphia; that appellant continued to maintain a marital relationship with his wife while she lived in New Jersey on property co-owned with appellant; that appellant was the sole support of his wife and family living in New Jersey; that appellant's children attended school in New Jersey. These well-supported facts fully substantiate the conclusion that the domicile of appellant was in New Jersey, and we are bound by the facts supported by substantial evidence and proper conclusions of law made by the Commission.

This seems to be a case where appellant has made a declaration of domicile, yet did not act in accordance with the declaration. In such a situation, the self-serving declaration cannot be conclusive but must yield to the intent which the acts and conduct of the person clearly indicate. *See Dorrance's Estate, supra.*

Affirmed.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I must respectfully dissent. Although I am in full accord with the majority's conclusion that the term "bona fide residence," as used in §20-101 of The Philadelphia Code, must be interpreted to require a "legal residence" or "domicile" within Philadelphia, and as construed that this requirement does not infringe upon Appellant's constitutional right to travel or equal protection, I cannot agree that there is substantial evidence to support the findings that Appellant is no longer a bona fide resident of the city.

"Bona fide residence" has been construed to mean a residence with domiciliary intent, i.e., a residence which an individual considers his home and where he intends to remain. *Alburger v. Alburger,* 138 Pa. Superior Ct. 339, 10 A.2d 888 (1939). While an individual may have many residences, he can have but one domicile. *Goetz v. Borough of Zelienople,* 14 Pa. Commonwealth Ct. 639, 324 A.2d 808 (1974). It is equally well settled that once a domicile in one locality is established, the party alleging a change in domicile has the burden of proving 1) a residence in a new locality, and 2) an intention to remain there. *See Dorrence's Estate,* 309 Pa. 151, 163 A. 303 (1932) ; *Alburger v. Alburger, supra.* In the instant case, it is undisputed that prior to November of 1971 Appellant's domicile or "bona fide residence" was 5553 Greenway Avenue, Philadelphia. At this time, after repeated incidents of vandalism to the property and physical abuse inflicted upon their children by gangs in

the area, Appellant's wife and nine of their children moved to a summer home which they had owned for a number of years in Villas, New Jersey. Appellant's description of this separation as well as his intention to remain in the city are unrebutted on this record:

"Because of all these incidents, my wife said she was leaving. At that time I pleaded with her to stay. We had a house in the Villas. It was a summer house. I pleaded with her to stay. I have to work in the city. I have to live in the city. My wife said she was more interested in her children's life than in my job. . . ."

Appellant continued to live with his oldest son at the Greenway address until September of 1972, at which time he was forced to sell the house because of continued vandalism while he was at work. He thereafter moved to his mother's home at 6927 Chester Avenue, Philadelphia. The record is equally undisputed that Appellant lived at this address on his duty days; had his own room there; paid rent in kind by purchasing the household groceries and performing maintenance upkeep; was registered to vote at this address; received mail and his telephone was listed at this address; his auto was registered there as was his driver's license; he maintained his checking and savings account at a local branch; and attended church within five blocks of 6927 Chester Avenue. The only witness produced by the city· could not definitely put Appellant at the Villas address at any time during the investigation of his residency. Yet, after his dismissal and with only a half-hour's notice, Appellant was found at 6927 Chester Avenue when fire officials came to retrieve his departmental firefighting gear.

The majority notes that the legal conclusion of where one is domiciled largely depends upon the facts of each individual case, and here the determinative facts are that Appellant's family lives in New Jersey; his children attend school there; he is not estranged from his wife;

he continued to be the sole support of his family; and the Commission found that he "spends as much time, on the average, in New Jersey as he does at his parents' home on Chester Avenue." Although the place of his family's abode is a strong indicia of an individual's domicile, *Stabile Registration Case,* 348 Pa. 587, 36 A.2d 451 (1944), it is certainly not conclusive when the individual lives apart from his family with an intent to retain a domicile elsewhere and this intent is substantiated by the individual's dominant conduct. Thus, the controlling factor in the instant case must be the amount of time spent by Appellant between the two residences. As previously indicated, the Commission found that Appellant spent on the average as much time in New Jersey as he did at his mother's home in Philadelphia. The only competent evidence on his record, however, is that Appellant spent no more than two days per week with his family in Villas on his days off, and often quite less. The Commission, nevertheless, reasoned that since Appellant spent two nights a week on duty at the fire station, he spent no more than three nights per week at his Philadelphia residence. This adroit analysis, however, overlooks the undisputed evidence that on his night duty days Appellant spent his free hours at his mother's home. Thus, I can only conclude that the Commission's finding on this point is unsupported by substantive evidence.

After carefully reading and re-reading this record, I cannot say that the city met its burden of proving a change of domicile by *Appellant,* as distinguished from his wife and family. To the contrary, the evidence reveals a man faced with the difficult decision of either quitting a job he had held and faithfully performed for some sixteen years, or living apart from his family in order to retain that job. It seems clear to me that Appellant was aware of the city's residency requirement, and, consonant with this knowledge, that he intended to retain his domicile in Philadelphia and did everything

he could to effecutate this intent. The fact that his family lives in New Jersey and he stays with them on his days off does not, in my opinion, prove a change in domicile. We are not dealing here with a "paper" residence retained for voter registration or taxation purposes. Rather, the record here reveals objective conduct, going well beyond a mere declaration of domicile, which establishes that Appellant lives in Philadelphia and intends to remain there.

I would reverse the order of the court below and reinstate Appellant to his prior position.

Judge MENCER joins in this Dissent.