## Stottlemyer v. Stottlemyer

*Donald B. Swope,* and *Alan N. Linder,* for plaintiff.
*Daniel L. Carn,* for defendant.

BLAKEY, J., February 7, 1972.—This is an action challenging the constitutionality of the provision of the Pennsylvania Divorce Law that requires bona fide residence within the Commonwealth for a period of at least one year before an action in divorce may be commenced.

On November 16, 1971, plaintiff instituted an action in divorce by complaint which averred the residence of both parties in the Commonwealth since August 1971, and specifically stated that neither party had been a resident of Pennsylvania for one year prior to the filing of said complaint. Defendant filed preliminary objections asserting that the court did not have jurisdiction in this matter as neither party met the one year residency requirement set forth in section 16 of the Divorce Law of May 29, 1929, P. L. 1237, as amended, 23 PS §16.

Section 16 of the Divorce Law provides:

"No spouse shall be entitled to commence proceedings for divorce by virtue of this act who shall not have been a bona fide resident in this Commonwealth at least one whole year immediately previous to the filing of his or her petition or libel: Provided, That, if the proceedings for divorce are commenced in the county where the respondent has been a bona fide resident at least one whole year immediately previous to the filing of such proceedings, in such case, residence of the libellant within the county or State for any period shall not be required. The libellant shall be a competent witness to prove his or her residence."

The requirement of one year bona fide residence has been consistently interpreted by the Pennsylvania appellate courts as jurisdictional. In Fishman v. Fishman, 167 Pa. Superior Ct. 428 (1950), the court declared:

"A fundamental requisite of jurisdiction in actions for divorce is the residential requirement of the statute that the spouse bringing a divorce action has been a bona fide resident in the Commonwealth at least one year before the filing of the libel . . . Such requirement is strictly jurisdictional and cannot be waived by the parties, even with the consent of the court."

Consequently, if the statutory requirement is valid, this court is required to dismiss the complaint for admitted failure to meet said jurisdictional requirement.

Plaintiff, however, asserts that the statutory requirement of one year bona fide residence is unconstitutional, violating (a) the equal protection and (b) the due process clauses of the fourteenth amendment of the United States Constitution as well as (c) the right to travel guaranteed by said Constitution. While there are many decisions of the appellate courts of the Commonwealth interpreting and enforcing the jurisdictional requirement for an action in divorce, this court has not found any Pennsylvania decision on the specific constitutional issues now raised. Consequently, we shall rule on the constitutional questions in the order stated.

Preliminarily, it is clear that the Supreme Court of the United States has declared that the marriage relationship is a "basic civil right of man" (Loving v. Virginia, 388 U.S. 1 (1967)) and a "fundamental human relationship": Boddie v. Connecticut, 401 U.S. 371 (1971). Further, the Supreme Court in Boddie, supra, held that, given the basic position of marriage in our society's hierarchy of values and the fact that the State has monopolized the means for legally dissolving the relationship, the State's divorce laws and procedures are subject to the more stringent tests of constitutionality applicable when such basic rights are at issue.

Consequently, the pertinent test of constitutionality under the equal protection clause is whether the classification represented by the requirement of one year bona fide residence is justified by a "compelling State interest": Shapiro v. Thompson, 394 U.S. 618 (1969).

There can be no question that the Commonwealth

has a unique and abiding interest in the subject of marriage and divorce. As stated in Cronise v. Cronise, 54 Pa. 255 (1867):

"The law for certain purposes regards marriage as initiated by a civil contract, yet it is but a ceremonial ushering in a fundamental institution of the state. The relation itself is founded in nature and like other natural rights of persons, becomes a subject of regulation for the good of society. The social fabric is reared upon it, for without properly regulated marriage, the welfare, order and happiness of the state cannot be maintained. Where the greater interests of the state demand it, marriage may be prohibited; for instance, within certain degrees of consanguinity, as deleterious to the offspring and to morals. For the same reason the law may dissolve it . . ."

The interests of the Commonwealth in the preservation of the marriage status is the justification for those provisions of the Divorce Law which forbid dissolution of marriage at the mere will of the parties. As is frequently stated, the Commonwealth is an interested third party in every proceeding for divorce (Braum v. Potter Title and Trust Co., 301 Pa. 365 (1930)), and consequently, "Divorces are granted on public grounds and not to suit the mere desires of the parties": English v. English, 19 Pa. Superior Ct. 586, 598 (1902).

Freedman, Law of Marriage and Divorce in Pennsylvania, pages 258-59, states that the doctrine of public policy which declares the Commonwealth to be a third party to every divorce is so deep seated that it pervades the entire law on the subject. He notes that it is this interest of the State which has led to numerous principles unique to the law of divorce, such as the requirement that the suit must be free from collusion; that all relevant facts be placed in the record; that the court itself may enter facts in evidence whether offered

by the parties or not; that the master representing the State in the proceeding has the right to cross-examine witnesses; and that the general principles as to judgment by default are not operative.

The statutory requirement of a bona fide residence for a period of one year is related to the above view of public policy and public interest. As stated in Freedman, supra, page 259:

"Out of the same fundamental principle arises the doctrine, peculiar to divorce, by which resort to the courts of the state is refused to transients and permitted only to parties fulfilling specific and jealously guarded residential and domiciliary requirements."

The public policy reflected by the residential requirement goes back to the first general statutory provisions for divorce, the Act of September 19, 1785, which required the libellant to have resided in the Commonwealth at least one whole year previous to the filing of the petition or libel. Our appellate courts have declared this jurisdictional requirement to be part of "the fundamental policy of the Commonwealth": Verbeck v. Verbeck, 160 Pa. Superior Ct. 515 (1947).

However, the constitutional test imposed by the Loving, Shapiro, and Boddie cases, supra, requires more than a compelling State interest in a requirement which creates a classification affecting a basic right; it requires an interrelationship so that the classification is "justified" by said compelling interest. We find such justification by analysis of a classification which the Supreme Court itself has imposed on all divorce actions.

In Williams v. North Carolina, 317 U S. 287 (1942), the United States Supreme Court held that domicile of the plaintiff, immaterial to jurisdiction in a personal action, is essential to the court's jurisdiction to entitle a divorce decree to full faith and credit under the

United States Constitution, at least where defendant did not appear and was not personally served. In the second Williams' case (Williams v. North Carolina, 325 U.S. 226 (1945)), the court went on to declare that judicial power to grant a divorce is founded on domicile. As stated by Freedman, supra, page 1413: "The principle of domicile has become in effect the constitutional basis of divorce jurisdiction."

Obviously, a requirement of domicile, alone, establishes a classification whereby one plaintiff physically present in the Commonwealth for considerably more than a year without the intent of making Pennsylvania her home, would be unable to obtain a divorce, while her neighbor, present for a few days with the required intent, would be free to immediately institute a divorce action. Logically, if the classification imposed by our highest court is valid, such classification must be deemed justified by a compelling State interest.

By section 16 of its Divorce Law, Pennsylvania has stated its jurisdictional requirement for an action in divorce to be bona fide residence for a period of one year. A long line of appellate authority has held this language to mean physical presence for one year with domiciliary intent: Alburger v. Alburger, 138 Pa. Superior Ct. 339 (1940). While Pennsylvania does not use the word "domicile," it has by this statute defined its jurisdictional basis so as to fully meet the jurisdictional requirements confirmed by the two Williams cases. It is clear that if the statutory test is met, that Pennsylvania decrees will meet the requirement established by the Supreme Court as essential to entitle a divorce decree to full faith and credit.

We believe that Pennsylvania has a compelling State interest in preserving the sanctity of its divorce decrees and that the classification created by the statutory requirement is consequently justified by said compelling interest.

It is true that a lesser requirement might also qualify for extraterritorial recognition under the doctrine of the Williams cases. At least in theory, domicile, being purely a matter of intent, can be established in one day. However, it is equally true that substantial difficulties can be and have been attributed to minimal requirements to establish jurisdiction for the purposes of divorce. The "quicky divorce" available in certain States and foreign jurisdictions has frequently been nullified by collateral attack, creating conflict in the laws of the several States as to the validity of a given marriage and serious problems as to support, custody, visitation, the criminal offense of bigamy, and complexities in the settlement of estates.

However, in our opinion, the Pennsylvania legislature had the right to establish the more rigorous jurisdictional standard of bona fide residence for a full year as a means to secure the validity of a Pennsylvania divorce decree from such collateral attack, to assure the parties to the action that the decree would be entitled to full faith and credit under our Federal Constitution, and to eliminate the numerous problems created by the more lenient standards.

The essential point, in our opinion, is that the recent Supreme Court opinions which we have cited require justification by a compelling State interest of a classification affecting basic human rights, but do not require this court to find such justification as to the precise line at issue. In Shapiro, supra, the court held a one-year waiting period for welfare benefits unconstitutional as the court found no constitutionally acceptable justification for any classification, not because they felt that the one-year period was too long or the wrong approach. However, in our case, the Supreme Court has held that there must be a classification if the decree is to receive full faith and credit so that the challenge here is not to the propriety of a

classification, but to the nature or length of these requirements. The classification itself being justified by the required State interest, we conclude that we should defer to the legislature as to the precise limitations.

To read said decisions of our highest court to the contrary would logically result in decisions which would strike countless statutory limitations as unconstitutional, rendering the court system a super legislature. By way of example, a divorce may be obtained in Pennsylvania by establishing willful desertion for a period of two years. This, obviously, creates a classification of spouses who have been willfully deserted for 18 months who are unable to obtain a divorce compared to parties whose spouse has been absent for six additional months who have the remedy at hand. In short, we do not believe that the Shapiro case requires a determination by the court that the precise line established by the legislature at two years is justified by a compelling State interest or that such compelling State interest is not equally served by a longer or shorter period.

Consequently, we conclude and hold that bona fide residence for a period of one year, imposed by our legislature as the minimum jurisdictional requirement for the institution of a divorce action, is, like domicile in the traditional sense, justified by a compelling interest of the Commonwealth and is, therefore, constitutional within the requirements of the equal protection clause of the fourteenth amendment.

The due process clause of the fourteenth amendment as set forth in the Boddie case, supra, requires, at a minimum, that absent a countervailing State interest of overriding significance, each citizen of this nation must be given a meaningful opportunity to be heard within the limits of practicality. Mr. Justice

Harlin in the Boddie case, supra, held that it was a denial of due process to refuse to permit indigent persons to bring an action in divorce unless each paid certain costs that they were unable to pay. It was clear that the Connecticut cost requirement prevented all parties within the class from terminating their marriage relationship in the only legally permissible way and operated to totally deny them access to the courts. At the conclusion of its decision, the Supreme Court indicated that its ruling was limited to the precise situation before it.

In the issue at bar, the one-year residence requirement does not preclude plaintiff from a "meaningful opportunity to be heard," but postpones such opportunity until the minimal jurisdictional requirements have been met by continued residency. We cannot equate a denial of access to our court system as a consequence of poverty, which may well continue indefinitely, with free and open access to the courts after meeting a residence requirement to establish jurisdiction, which will necessarily be met within a period we deem reasonable. The former has been clearly and soundly held a denial of due process. In our opinion, the latter is not.

Further, this court sees no essential difference between the "overriding significance" test of the due process clause as compared with the "compelling interest" test of the equal protection clause. Consequently, the factors set forth above, which in the opinion of this court justify the challenged requirement on the basis of a compelling State interest are equally applicable as justification on the due process issue.

Accordingly, we hold that the requirement of one-year bona fide residence in this Commonwealth is constitutional under the due process clause of the Federal Constitution.

Finally, the Commonwealth's jurisdictional requirement for actions in divorce has been challenged as an unconstitutional infringement on the right to travel from one State to another.

The Supreme Court in Shapiro, supra, reaffirmed the constitutional right to travel and the fact that such right occupies a position fundamental to the concept of our Federal Union and is a basic constitutional right, although not explicitly stated in a specific constitutional provision. The court, at page 629, defined the right as requiring:

". . . that all citizens be free to travel throughout the length and depth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement."

In Shapiro, supra, the court rejected an attempt to justify a classification under the equal protection clause on the basis that it would discourage the influx of indigents into the State by holding that such a purpose is constitutionally impermissible since it opposed said right to travel. The court concluded, page 631:

"Thus, the purpose of deterring the in-migration of indigents cannot serve as justification for the classification created by the one-year waiting period, since that purpose is constitutionally impermissible. If a law has 'no other purpose . . . than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it (is) patently unconstitutional.' "

There is no basis to contend that the jurisdictional requirement of the Pennsylvania Divorce Law was adopted with the purpose of "chilling" the right of travel into this State. The statutory requirement antedates any judicial declaration of such right, and we have found that the requirements were generated by

considerations of public policy stated above in our analysis of the equal protection issue.

It is conceivable that circumstances may combine so that in an occasional and isolated situation the Pennsylvania jurisdictional requirements for divorce actions might have the practical effect of inhibiting migration into this State. The thesis requires a spouse contemplating a move into Pennsylvania, who has not to such date instituted an action in divorce at his or her present residence and who is simultaneously sufficiently anxious to institute an action within a year so that the Pennsylvania jurisdictional requirement would discourage the proposed move. In the opinion of this court, the argument is strained and the relationship between the jurisdictional requirement and the right to travel questionable and incidental. One could argue with equal or greater effect that the level of Pennsylvania taxes, Pennsylvania restrictions on the width of mobile homes, Pennsylvania building codes, or regulations limiting the right to hunt or fish in Pennsylvania may under a given situation equally, or more effectively, discourage a potential traveler. We conclude that the impact of the jurisdictional requirement on the right to travel does not, in any event, unreasonably burden the constitutional right and thus not violate the right as defined by the Supreme Court in the Shapiro case.

In summary, we hold that the provision of the Pennsylvania Divorce Law challenged by this action is constitutional.

In reaching our decision, the court has considered a recent opinion in the Family Court of the Third Circuit of the State of Hawaii (Whitehead v. Whitehead, Docket No. 5505), and a 1971 decision of the United States District Court for the Eastern District of Wisconsin (Wymelenberg v. Symann, Civil Action

No. 70-D-397), in which said courts respectively held unconstitutional the one-year residence requirement of Hawaii and the two-year requirement of Wisconsin. In neither case did the court deal with the specific interest of the State which we have held to be justification for the challenged classification. While we acknowledge that the issue is difficult, we are obliged to conclude that the weight of authority and reason supports the validity of the challenged statute as against the arguments that would require this court to strike as unconstitutional a jurisdictional requirement for actions in divorce which has been part of the law and policy of this Commonwealth for 187 years.

Accordingly, we enter this

### ORDER

And now, February 7, 1972, the preliminary objections to the jurisdiction of this court are sustained and the action is dismissed.